[No. 38421.　Department One.　September 29, 1966.]

ERNEST W. JORGENSEN et al., Respondents, v. D. K. BARNES, INC., et al., Appellants.*

*Ennis & Klobucher* and *William G. Ennis,* for appellants.

*Geo. W. Young* and *Geo. R. Nethercutt,* for respondents.

TURNER, J.†—This action for damages for fraud and for breach of contract arises out of a sale by defendant corporation to plaintiffs of the retail portion of its business in Fiberform boats and certain related products.

Prior to the sale, defendants had built up a substantial business in the manufacture and sale of fiberglass boats,

*Reported in 420 P.2d 689.

†Judge Turner is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

repairing, upholstery and storage of boats; sales of boat trailers, marine motors, supplies and fiberglass products, and motor repairs. Sales were made both at wholesale and retail. The company had two places of business. One was at East 230 Sprague Avenue, in Spokane, and the other at Industrial Park, located 17 miles east of Spokane.

The company's products were distributed in Washington, Oregon, California, Idaho, Montana, and British Columbia.

The sale to plaintiffs was evidenced by a written contract, dated April 23, 1963, the material portions of which may be summarized as follows: it recites that D. K. Barnes, Inc., the seller, is engaged in the manufacture and wholesale distribution of boats, marine supplies and fiberglass products and supplies at the Spokane Industrial Park, and is also engaged in the retail sale of said items at East 230 Sprague Avenue, Spokane, and also the casual wholesale of fiberglass and marine products, materials and supplies at the latter address; that the company is desirous of selling its retail business and such wholesale business conducted from the retail outlet, but retaining its manufacturing and wholesaling at the Industrial Park; and that, as Jorgensen is desirous of purchasing the retail and casual wholesale business conducted at East 230 Sprague Avenue, it is therefore agreed:

1. The seller agrees to sell and the buyer agrees to buy the following:

A. The retail business conducted at East 230 Sprague Avenue, Spokane, Washington;

B. Such wholesale business in marine and fiberglass supplies, products and materials as is done at the above address;

. . . .

II. It is understood that the seller will retain all interest in the manufacturing business and the business of wholesaling boats, trailers, marine and fiberglass products to his dealer organization and others, and shall retain all interest in the use of the name Fiberform Plastics Manufacturing Company.

By paragraph 4, the seller granted to the buyer "an ex-

clusive franchise for Spokane County, Washington, to sell Fiberform boats . . . ."

By paragraph 16, the seller covenanted that it had the right to sell the good will, fixtures, etc., and that "the same shall be enjoyed by the buyer . . . free from any interruption or disturbance, and also that the seller shall not . . . do or cause to be done, any willful act or thing to the prejudice of said trade or business as heretofore carried on and conducted by the seller at the retail outlet . . . ."

It is important to note that the meaning of the contract is uncertain in several respects. Nowhere in the document is there a description or definition of "such wholesale business . . . as is done at" the retail outlet, as referred to in paragraph 1B. The "business of wholesaling boats . . . marine and fiberglass products to his dealer organizations and others," in which the seller retains all interest by paragraph 2, is not defined. Whether the word "wholesale" means "in wholesale lots" or "at wholesale prices" is not clear. It is necessary to resort to evidence outside the contract to discover the true meaning of these provisions.

Plaintiffs commenced this suit in July, 1964. In the amended complaint, they set up two causes of action. In the first, they alleged that the contract was induced by defendants' false representations that the business sold grossed over $331,000 the previous year and would produce a net income of at least $30,000 a year. In the second cause, plaintiffs alleged that defendants sold their boats and products at wholesale prices to retail purchasers in Spokane County, and let it be known generally that retail purchasers could buy directly from defendants at wholesale prices, all in breach of their contract to grant plaintiffs an exclusive agency in Spokane County, thereby destroying the value of the business sold to plaintiffs.

The answer denied these allegations, and set up an affirmative defense and three counterclaims which are not relevant to this appeal.

At the trial, substantial evidence was introduced by the parties in support of their respective theories.

The jury found for defendants on the fraud claim, and returned a verdict of $45,000 for plaintiffs on the second cause of action for breach of contract. Defendants appeal, alleging that the court erred in admitting evidence of various transactions not shown to be in violation of the contract; and that the verdict was excessive because the jury failed to follow the court's instruction on the measure of damages.

The transactions involved in the evidence questions consist almost entirely of sales of boats, marine products and supplies, shown by invoices. The correctness of the trial court's rulings on these transactions depends upon whether they constituted violations of the contract. This in turn depends upon the meaning of the contract. In this case the trial judge, instead of construing the agreement himself, submitted the question of interpretation to the jury by instruction No. 9, reading as follows:

There is now in evidence before you plaintiffs' exhibit No. 4. It will be your duty to first determine, from an examination of this agreement, whether the provisions therein were violated by the defendants, and to determine from the instrument alone, if possible, what the mutual rights and obligations of the parties thereto were which were undertaken by them respectively. If you can determine the intent of the parties from said document alone, it will be your duty to do so. If, however, any of the provisions or words or clauses of said contract, as written, do not appear clear to you, then you may consider the conduct of the parties, both before and after entering into the contract, to determine what they intended thereby in reference particularly to the parts thereof which appear to be in controversy in this case.

Your primary objective will be to determine the intent of the parties from the written instrument alone, if you can do so, but if not, you may have recourse to other evidence admitted during the trial in assisting you to determine what was the actual agreement between the parties, and whether those agreements were observed or violated; and, if violated, who was proximately damaged thereby, and in what amounts.

No exception was taken to this instruction. There is no record of what the jury found the contract to mean. Conse-

quently, we have no standard by which to review the admissibility of the exhibits complained of. It is true, as pointed out by appellants, that the trial court sustained objections to some items which appear to be identical in character to certain of those which were admitted and are now complained of. It would appear that either the admission in evidence or the exclusion was erroneous, but we cannot tell which without knowing the meaning of the contract as determined by the trier of the fact, and this is not before us.

■ Furthermore, there is no showing that the error, if any, in the admission of evidence affected the result. Without such a showing we cannot say that appellant was prejudiced.

Appellants contend that the jury failed to follow the measure of damages prescribed in instruction No. 11, and that the award of $45,000 was far in excess of any amount supported by the evidence. The instruction reads as follows:

If under the evidence and instructions of the Court you find that the defendants breached their agreement with the plaintiffs by making sales in competition to the plaintiffs, as alleged in their second cause of action, it will then be your duty to assess the damages, if any, sustained by the plaintiffs on account of such a breach of contract.

You are instructed that the correct rule of damages under such circumstances is not what the defendants gained by making such sales; it is the value of the business that the plaintiffs lost by reason thereof.

Before the plaintiffs may recover more than nominal damages for such breach, the plaintiffs must show a reasonable likelihood that they would have made such sales if the defendants had not made them. Furthermore, in considering the plaintiffs' loss, if you find there was such a loss, the amount thereof cannot be left to speculation, and plaintiffs must establish to your satisfaction the expenses they would have entailed in the making of said sales if you find that performance on the part of the plaintiffs would have entailed expenses.

Appellants argue that this instruction limits respondents' recovery to the sum total of the net profits on specific sales

made by appellants in violation of the contract, which would have been made by respondents if the appellants had not made them. Appellants are clearly correct in stating that the total selling prices, shown by all invoices admitted in evidence, were less than $50,000, and since net profit was not over 10 per cent of the gross, it could not have exceeded $5,000 on those sales.

Respondents do not attempt to justify the $45,000 verdict as a total of net profits on specific sales lost, but rather as a fair valuation of the retail business which appellants sold to respondents and then destroyed by their wrongful competition.

■ Appellants requested instruction No. 11, and the court gave it substantially in the form requested. No doubt appellants intended that it should be construed as they now argue. The fact remains that the word "business" is ambiguous. In this context, it can mean either one or more specific sales, or it can mean the entire mercantile operation which was sold to respondents. It is clear that the jury understood it in the latter sense. The question becomes, therefore, whether the jury were justified in so understanding it, and if they were, whether the amount finds adequate support in the evidence.

Looking first to the language of instruction No. 11 itself, the second paragraph, considered in the light of respondents' claim that they were forced out of business by appellants' competition, makes the jury's construction permissible, even obvious. The third paragraph refers to specific sales, and to the expense of making them. It does not expressly limit the damages to the sum of the net profits on all the sales lost. It may reasonably be construed to mean that the entire business enterprise would not have more than a nominal value unless respondents could show that they would have made the sales at a profit; if so, the business would have a substantial value, which the jury should fix under this and other instructions.

Instruction No. 1 lends further support to the jury's construction of the word "business." It summarizes the complaint and recites the allegations of appellants' wrong-

ful sales and competition, "all of which has had the effect of destroying and rendering completely worthless said business sold to them . . ." and that had they known that respondents would continue "selling direct to dealers and private purchasers in Spokane County, they would not have bought the business from defendants and would not have parted with $90,000 of their money."

It is also worth noting that in the opening statement of respondents' counsel, he used the word "business" a great many times, and, with only six exceptions, it was invariably in the sense of a whole enterprise and not a series of specific transactions. In appellants' opening statement the word "business" was also used many times, and without a single exception it was used in the sense of a commercial enterprise.

We hold that the jury were authorized to construe instruction No. 11 to mean that the proper measure of damages was the value of the business bought by respondents and destroyed by the acts of appellants in violation of their contract.

Appellants are not in a position to complain of the meaning attributed to this instruction by the jury, for they requested it, and took no exception either to this or to the first instruction.

There is adequate support in the evidence for the valuation of $45,000.

Nothing in this opinion shall be construed as approving the instructions given by the trial court. They are not challenged by any assignment of error, and their correctness is not before us for review.

The judgment is affirmed.

ROSELLINI, C. J., HILL, HUNTER, and HALE, JJ., concur.