[No. 44899.   En Banc.   February 16, 1978.]

JAMES F. LAMBORN, *Appellant,* v. PHILLIPS PACIFIC CHEMICAL CO., *Respondent.*

702

*Sullivan & McKinlay,* by *Edward H. McKinlay,* for appellant.

*Olson & Olson,* by *Roger L. Olson,* for respondent.

*Daniel F. Sullivan* and *Donovan R. Flora* on behalf of Washington State Trial Lawyers Association, amici curiae.

STAFFORD, J.—Appellant Lamborn, an employee of Widing Transportation Company (Widing), appeals from a judgment entered following a jury verdict in his third–party employer action against respondent, Phillips Pacific Chemical Co. We affirm.

Widing, an independent contractor, hauls ammonia products for respondent. Appellant, a Widing employee, brought this action after he fell from Widing's tank truck while loading clear aqua ammonia at respondent's ammonia manufacturing plant. Appellant claimed respondent was negligent in failing to provide both a reasonably safe place to work and reasonably safe equipment. Appellant's theory was based primarily upon the differing loading facilities and safety equipment provided at respondent's two liquid ammonia loading sites.

Respondent manufactures two liquid ammonia products: clear aqua ammonia and fertilizer aqua ammonia. The primary differences between them are color, ultimate usage, and the greater sales volume of fertilizer aqua ammonia. Each product is loaded at a different site at respondent's plant.

The *mechanics* of loading both products are generally similar. A tank truck is driven beneath the loading equipment; the driver opens the loading dome on top of the truck tank; a loading spout is inserted into the dome; the tank is filled; the spout is removed; and the dome is closed. Thereafter the driver transports the liquid ammonia to respondent's customers. However, the loading *facilities* and

attendant *safety equipment* at respondent's two loading sites differ significantly.

At the fertilizer ammonia site, respondent provides an overhead loading rack with an attached catwalk. The catwalk, when in place, extends to the top of the tank truck thereby providing easy and safe access for the driver to the top of the truck. After the truck is in the loading area, the driver arranges the rack and catwalk over the truck by an automatic control. The driver is thus able to walk onto the truck tank, via the catwalk, and manually open the loading dome. Thereafter, the driver may dismount and, by automatic control, position a metal loading spout over the dome of the truck tank. Exhaust fans and a hood, which fits over the dome, carry away ammonia fumes. With the spout, fan and hood in place, the driver dials an automatic volume control and activates a pump switch to begin the ammonia flow. When the tank is filled, an automatic shut–off valve stops the ammonia flow. The spout is then automatically disconnected and the driver remounts the truck to close the dome. Usually no employee of respondent assists in this loading process.

The loading process is less automated at the clear ammonia site. Neither a loading rack nor catwalk is provided. Rather, the driver must climb onto the truck tank to open the loading dome. Respondent's attendant then must pass him the loading spout, a 2– to 3–inch rubber hose which is inserted into the dome and fastened securely with a rope. Exhaust fans and hoods are not provided. The driver inserts a dipstick into the dome, orally instructs the attendant to activate the ammonia pump, and leaves the truck. The driver estimates when the tank is full by one of three methods: (1) passage of time; (2) noting the position of the dipstick; or (3) noting the volume on respondent's unreliable pump gauge. Upon estimating a full load, the driver must remount the truck and straighten the dipstick to more accurately measure the load. Often, several dipstick measurements are required. At full load, the spout is removed and the dome is manually closed.

Gas masks were readily available at the fertilizer loading site and were located within 25 or 30 yards of the clear ammonia loading site. Neither site had a sign requiring that masks be worn or alerting drivers of their location. At the fertilizer site, an enclosed house was provided for drivers to escape ammonia fumes not exhausted by the hood. No such house was located at the clear ammonia site.

Appellant's injury occurred while he was loading clear ammonia. He estimated his tank was nearly full and remounted the truck intending to measure the load with the dipstick. As appellant approached the loading hole a sudden shift in wind caused ammonia fumes to blow into his face. He was not wearing a gas mask and, thus, was momentarily blinded or dazed. He either fell or ran off the top of the truck and permanently injured his heel.

Appellant sued respondent, as a third–party employer, alleging respondent had failed to provide him with a reasonably safe place to work and had failed to provide him with reasonably safe equipment. Respondent denied negligence and alleged contributory negligence on appellant's part. At trial respondent maintained that the *sole* proximate cause of appellant's injury was either appellant's own negligence, the negligence of appellant's employer, Widing, or a concurrence of the two.

During trial, appellant unsuccessfully sought to exclude evidence of Widing's negligence. Appellant argued that his employer's negligence was irrelevant since, at best, it made respondent a concurrent tort–feasor. Alternatively, appellant orally requested a cautionary instruction limiting the jury's consideration of such evidence. However, an actual cautionary instruction was neither proposed by appellant nor given by the court.

The jury set appellant's damages at $350,000 but found him 99 percent negligent. Thus, the trial court reduced the damage award to $3,500, or 1 percent of $350,000. Appellant's motion for a new trial was denied and he appeals. The Court of Appeals certified the matter to this court.

First, appellant contends the trial court erred by refusing to exclude evidence of employer Widing's negligence. It is said to be irrelevant. We disagree.

■ The relevancy of evidence is a matter within the discretion of the trial court. *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 893, 568 P.2d 764 (1977); *Ladley v. Saint Paul Fire & Marine Ins. Co.*, 73 Wn.2d 928, 934, 442 P.2d 983 (1968); *Jacobs v. Brock*, 73 Wn.2d 234, 238, 437 P.2d 920 (1968). Also, facts tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, are relevant. *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 89, 549 P.2d 483 (1976); *Ladley v. Saint Paul Fire & Marine Ins. Co., supra* at 934; *Bloomquist v. Buffelen Mfg. Co.*, 47 Wn.2d 828, 829, 289 P.2d 1041 (1955).

Considering the foregoing, we note it was respondent's theory that the *sole* proximate cause of appellant's injury was (1) employer Widing's negligence in failing to properly instruct appellant on safety precautions or to furnish him with safe equipment; (2) appellant's own negligence in failing to seek training or to wear a gas mask; or, (3) a concurrence of the two. Consequently, evidence of Widing's negligence would tend to establish either that Widing alone, or in conjunction with appellant, proximately caused the injury. As such, the evidence was both relevant and properly admitted by the trial court. *See Fenimore v. Donald M. Drake Constr. Co., supra* at 89; *Ladley v. Saint Paul Fire & Marine Ins. Co., supra* at 934; *Bloomquist v. Buffelen Mfg. Co., supra* at 829.

Appellant asserts, however, that if in addition to Widing's negligence respondent's negligence might also have been shown to be a proximate cause of appellant's injury, then evidence of Widing's negligence would merely establish that Widing and respondent were concurrent tort–feasors. Thus, it is urged, respondent would still be liable and the challenged evidence would be irrelevant. We disagree.

■ The possibility that the jury might find Widing and respondent to have been concurrent tort–feasors does not

destroy either the relevance or admissibility of the evidence of Widing's negligence. Relevant evidence of a third party's negligence is admissible even though proof thereof may not relieve the defendant of liability. *Fenimore v. Donald M. Drake Constr. Co., supra* at 89.

Next, appellant claims the trial court erred by failing to give a cautionary instruction limiting the jury's consideration of the challenged evidence. Appellant was concerned the jury might impute to him the negligence of his employer. We will not consider the alleged error. Appellant proposed neither a cautionary instruction nor an instruction segregating Widing's negligence from his own. If evidence is admissible for a specific purpose, error cannot be assigned either to its admission or effect if no instruction limiting its purpose has been requested and actually proposed. *State v. Smith,* 74 Wn.2d 744, 772, 446 P.2d 571 (1968); *McGarvey v. Seattle,* 62 Wn.2d 524, 533, 384 P.2d 127 (1963); *Lundberg v. Baumgartner,* 5 Wn.2d 619, 622, 106 P.2d 566 (1940).

Appellant also assigns error to the giving of instruction No. 24 which reads:

The owner of premises owes to the servant of the independent contractor employed to perform work on his premises a duty to avoid endangering him by the owner's negligence or affirmative act, but owes no duty to protect him from the negligence of his own master.

Appellant maintains the instruction is an incorrect statement of the law, citing *Lyons v. Redding Constr. Co.,* 83 Wn.2d 86, 515 P.2d 821 (1973). This argument is not well taken.

The owner of a premises owes to the servant of an independent contractor, employed to perform work on that owner's premises, the duty to avoid endangering him by the owner's own negligence. *Epperly v. Seattle,* 65 Wn.2d 777, 785, 399 P.2d 591 (1965). In short, he owes the same duty of care to the on-premise servants of another master as he owes to his own employees. *Lyons v. Redding Constr. Co., supra* at 94; *Greenleaf v. Puget Sound Bridge & Dredging*

*Co.,* 58 Wn.2d 647, 364 P.2d 796 (1961). This obligation includes a duty to keep the premises under his control reasonably safe and to warn of dangers which are not obvious to the employee but are known to or discoverable by the owner in the exercise of reasonable care. *Fenimore v. Donald M. Drake Constr. Co., supra* at 94–95; *Hartman v. Port of Seattle,* 63 Wn.2d 879, 882, 389 P.2d 669 (1964); *Greenleaf v. Puget Sound Bridge & Dredging Co., supra* at 651; *Thorpe v. Boeing Co.,* 5 Wn. App. 706, 490 P.2d 448 (1971).

■ But, the *duty* of care owed by an owner to another's on–premise servants must be distinguished from the *absence of duty* by that owner to protect the servants of another from the negligence of that servant's own master. As we said in *Epperly* at page 785: .

The general rule is that the owner of premises owes to the servant of the independent contractor employed to perform work on his premises the duty to avoid endangering him by his own negligence or affirmative act, *but owes no duty to protect him from the negligence of his own master.*

(Italics ours.) Neither *Greenleaf* and its progeny, nor *Lyons* have altered the rule. Both were concerned with the owner's duty vis–a–vis the on–premise employee. They did not purport to change, nor do we now change, the sound rule that *an owner need not protect the servant of another from his own master's negligence.*

■ Appellant also argues that instruction No. 24 overemphasized irrelevant evidence of Widing's negligence. He is not correct. The challenged evidence was relevant and admissible as part of respondent's theory of the case. That being true, respondent was entitled to have the court instruct the jury on this theory as long as there was substantial evidence to support it. *Hester v. Watson,* 74 Wn.2d 924, 925, 448 P.2d 320 (1968); *Kelsey v. Pollock,* 59 Wn.2d 796, 797, 370 P.2d 598 (1962). The record makes it clear there was substantial evidence of Widing's negligence for the jury to consider, *i.e.,* its inattention to a safety program

and its failure to provide its drivers with gas masks. We therefore disagree that the challenged evidence was overemphasized.

█ We are also unpersuaded instruction No. 24 may have confused the jury. The jury sent the trial judge a note · which referred to instruction No. 19.[1] While appellant speculates this note *might* have been prompted by confusion over instruction No. 24, we cannot ignore the jury's sole and specific reference to instruction No. 19. Also, we note instruction No. 19 was proposed by appellant. Even if appellant now finds it wanting, he is in no position to complain. *Jorgensen v. D.K. Barnes, Inc.,* 69 Wn.2d 579, 585, 420 P.2d 689 (1966).

█ Appellant's final assignment of error concerns the court's failure to grant his motion for new trial. He urges a new trial was warranted because the damages actually *recovered* were so inadequate as to unmistakably demonstrate a verdict resulting from passion and prejudice. Appellant misapplies CR 59(a)(5).

The jury actually *awarded* appellant $350,000 in damages. This substantial award hardly denotes passion or prejudice adverse to appellant. Following the award, however, RCW 4.22.010 required the jury to separately determine appellant's own negligence. The jury concluded that he was 99 percent negligent. Applying comparative negligence principles, the trial court *reduced* the damage award to $3,500. While the recoverable damages are substantially lower than the damages actually sustained by appellant, they do not stem from passion or prejudice, but from a reduction of those damages by proper application of comparative negligence principles.

█ We will only overturn a jury verdict when it is clear there is no substantial evidence to support it. *State v. O'Connell,* 83 Wn.2d 797, 839, 523 P.2d 872, 77 A.L.R.3d

---

[1] The jury sent the following request to the trial court: "Is there any information available to us regarding the State Law for Safety on Phillips Chemical Premises other than instruction #19."

874 (1974); *Haynes v. Moore,* 14 Wn. App. 668, 545 P.2d 28 (1975). In this case the record clearly demonstrates appellant's total lack of due care in failing to wear a gas mask or even to ask for safety instructions. Appellant's sole explanation of his failure to take precautionary measures against a known hazard, prior to his injury, was his admission to being the "lazy type." Given this record, it can hardly be said there was no reasonable inference upon which the jury could base either the fact of or the degree of appellant's own negligence. CR 59(a)(7).

Finally, had appellant truly feared improper imputation of Widing's negligence to him, he could have proposed a segregation instruction. But, he did not. Thus, a new trial was neither warranted under CR 59(a)(5) and (7) nor was appellant deprived of substantial justice under CR 59(a)(9).

We affirm the trial court.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.