[No. 31151. Department Two. April 4, 1950.]

JOHN H. BUNN, *Respondent*, v. JOSEPH B. BATES, *Defendant*,
THE MADISON CORPORATION, *Appellant*.[1]

*Brown & Brown,* for appellant.

*Garvin, Frissell & George,* for respondent.

ROBINSON, J.—This appeal arises out of an action instituted in the superior court of Spokane county to establish and enforce a lien on certain property therein located, known as the Madison hotel.

The cause was heard before a judge, sitting without a jury, in June, 1947. In due course, a judgment was entered in favor of the plaintiff, Bunn, establishing a lien for $577.26, plus interest on that sum from January 27, 1947, plus sixty cents for filing the claim of lien, and attorney's fees for the sum of three hundred dollars. An appeal was taken to this court, and the following disposition was made thereof:

[1]Reported in 216 P. (2d) 741.

"We are unable to determine from the evidence which labor and material was used in performing the work which was mandatory under the lease, and which labor and material was used in performing work which was permissive.

"The judgment is reversed, and the cause remanded to the trial court to take additional testimony and render a decision in accordance with this opinion. Appellant shall recover its costs." *Bunn v. Bates,* 31 Wn. (2d) 315, 196 P. (2d) 741.

Following that direction, another hearing was had in April, 1949, before the same judge who tried the matter in 1947, and resulted in a similar judgment against The Madison Corporation, from which this appeal was taken in due course.

Prior to the second hearing, the plaintiff, John H. Bunn, having died in August, 1948, his surviving spouse and executrix, Floretta Josephine Bunn, was, by order of the court, substituted as plaintiff in the action.

The facts out of which the controversy arose are very fully and accurately stated in the opinion hereinbefore cited, and, therefore, only a brief summary thereof will be set out in this opinion. We have two statements of fact to deal with, however; for, at the very beginning of the second hearing of the case, in which the judgment entered is attacked on this appeal, the statement of facts in the first trial was admitted as defendant's exhibit No. 1.

Prior to, and during, 1946, Frank B. Jenkins was engaged, in Spokane, in the business of property management, insurance, and real estate, carried on under the name, The Jenkins Agency. In the summer of 1946, his office sold a large building in Spokane, known as The Madison Hotel Building, to The Madison Corporation, the corporation receiving title about July 1, 1946; and Jenkins was requested by the corporation to find a suitable tenant for a large, vacant portion of the ground floor, one hundred fifty feet by fifty feet, together with a basement space thereunder, ninety-three feet by eighty-nine feet, and report to it the qualifications of the proposed tenant. In October, 1946, The Jenkins Agency wrote a letter to The Madison Corporation,

stating that, subject to its approval, it had found an opportunity to rent the vacant space on the ground floor, and in the basement, to J. B. Bates, of Kennewick, Washington, and reported, as to his qualifications, that he was the owner of a hotel and business property in Kennewick and a hotel in Coulee City, that he operated two variety stores, and that his Dun & Bradstreet rating was "$125,000 to $200,000, good pay."

In that letter, The Jenkins Agency further said, with respect to Bates:

"He will take the space 'as is' and re-wire it so that all current consumed by him will be on his own individual meter. All necessary repairs and alterations will be made by him during the course of the lease. The Madison Corporation will put the plumbing and hand-operated elevator in good working condition."

As the result of the letter, above mentioned, a meeting was had on October 30, 1946, between Jenkins and Bates, on the one hand, and Dr. Whitaker, president of The Madison Corporation, and Roy S. Hathaway, a director thereof, on the other. After considerable discussion, the representatives of the corporation agreed to accept Bates as a tenant, whereupon the meeting adjourned, and the four men went to the office of the corporation's attorney to have the lease drawn. The lease, prepared and executed that day, covered a period commencing on December 1, 1946, and ending on November 30, 1951.

It was provided in the lease that the lessee could remodel and modernize the front of the storeroom, and that the lessee would redecorate and remodel the interior of the storeroom at his own expense.

This litigation, however, arises out of the following provisions of the lease:

"All electrical wiring shall be changed to the effect that all circuits in leased area are to be removed from present light meter and new meter loop established.

"All changes for the aforesaid re-modeling and re-wiring to be done at the expense of the lessees."

Shortly following the hearing directed by our opinion in 31 Wn. (2d) 315, the trial judge rendered a comprehensive memorandum opinion, first stating therein that the opinion, above recited, established the law of the case.

We, of course, concur in that.

"The law is well settled in this state that, on a second appeal, we will not review questions decided by us on the former appeal. [Citing three prior decisions of this court.]

"Upon the retrial, the parties and the trial court were all bound by the law as made by the decision on the first appeal. On appeal therefrom, the parties and this court are bound by that decision unless and until authoritatively overruled." *Baxter v. Ford Motor Co.,* 179 Wash. 123, 127, 35 P. (2d) 1090.

Having read the testimony adduced in both hearings, we will further say that we do not recede from any of the legal or factual statements in the opinion in 31 Wn. (2d) 315, but, by reference, we restate and reaffirm them in this opinion.

Appellant assigns error as to five of the trial court's eleven findings of fact. We have considered each of the findings of fact excepted to and find that each of them is supported by evidence adduced in one or other of the hearings and, in some cases, in both, and in other instances, by factual holdings made in this court's opinion in 31 Wn. (2d) 315 to 320, inclusive. The findings were, to a considerable extent, made upon conflicting evidence, and for that reason, and for the other reasons above indicated, will not be disturbed. Appellant also assigns as error, and contends argumentatively, that, after this court remanded the case for further testimony, none was introduced on the part of respondent which would give any relief under the facts and law of the case.

We reject that assignment and argument. The trial court's memorandum opinion pointed out that this court had held that it was mandatory, under the lease, to put in a new distribution panel, disconnect the circuits serving the leased property from the old distribution panel, and tie them into the new distribution panel, and that a portion of the labor and material claimed to be lienable was obviously used for that purpose, and continued as follows:

"It is the trial court's function and duty to determine the quantity of materials and labor so used. In so doing, the trial court has had the benefit of additional expert testimony from competent electricians on both sides; and in addition, at the request of counsel, has made a personal examination and inspection of the building in question owned by the Madison Corporation. This personal inspection by the trial court has been especially valuable in resolving the question as to the amount of labor and materials that were furnished by the Bunn Electric to the Madison Corporation. The building is a very large building, runing nearly 150 feet in depth and nearly 100 feet in width. . . . For the purposes of this decision, this court is starting with the first distribution panel which connects at a distance of some 75 feet from the meter loop panel. The meter loop is not here in question because it was furnished by the power supplier.

"The defendant Madison Corporation is rightly chargeable with all labor and materials furnished by the Bunn Electric in the installation in the branch circuit distribution panel and the branch circuits themselves. From the trial court's personal inspection, and with the aid of three electrician employees of the Bunn Electric—namely, John Paschall, Bill Hildebrand, and Henry Jones—the court is able to arrive at quite an accurate determination as to the labor and materials that should be chargeable to the defendant corporation. That the Supreme Court was right in holding that certain of these items were mandatory under the lease is supported by the observation that in three widely separated parts of the building certain required and necessary lighting installations were made by the Bunn Electric. At the extreme northernmost part of the basement of the building, Bunn Electric electricians wired for lighting in the fuel rooms. At the extreme southernmost portion of the basement, Bunn Electric electricians wired for proper lighting to the stairway from the first floor to the basement. And in a midwesterly portion, the plaintiff's electricians installed wiring for the toilet facilities. It is quite obvious that because of safety and sanitation ordinances, the building owner would be required to furnish such lighting service.

"The trial court is convinced that the testimony given by Mr. Bunn upon the original trial as to the labor and materials furnished by him was correct, and the court adopts his testimony in that respect. However, from the list of materials and the labor furnished by Mr. Bunn, there must be deleted those items relating to clothes racks, window and

ceiling lighting fixtures, wall outlets, and globes. Accordingly, the following materials are held to be non-lienable items because it was discretionary with the tenant Bates as to whether such improvements were to be installed:   . . ."

The court then inserted the same list of materials which this court listed and held nonlienable in its former opinion in 31 Wn. (2d), at page 318. The trial judge then held, in his memorandum opinion:

"The total materials furnished by Mr. Bunn was in the sum of $451.70, and after deducting the non-lienable items in the sum of $246.25, the sum of $205.45 remains as a lienable item in favor of the plaintiff Bunn Electric Company."

Nothing in our directive to the trial court in our first opinion in this cause (31 Wn. (2d) 315) limited the trial judge, in arriving at the judgment herein appealed from, to the additional evidence ordered and taken in compliance with the directive contained in that opinion.

Furthermore, everyone concerned in the second hearing knew that the trial judge would consider evidence adduced at the first trial; for appellant's counsel, at the very beginning of the second hearing, moved that the statement of facts at the first hearing be filed as an exhibit. The motion was granted, and, during the course of the second hearing, counsel for both parties read, in open court, portions of the evidence given at the first hearing.

There was new evidence in the second hearing tending to support the conclusion reached by the trial judge in establishing and determining what labor and materials claimed as lienable by Bunn were so and what portions were not; which, of course, was the whole purpose of the second hearing.

Evidence, valuable for that purpose, was elicited from Ernest Rorberg, an electrical engineer and cost estimator, who was called as a witness by the defendant. Rorberg was shown defendant's exhibit No. 2 RH, which was Bunn's six-sheet listing of the materials used by him in doing the work and for which he claimed a lien. After a short exami-

nation by defendant's counsel, the trial judge asked the witness:

"What you are telling me is that most of the items on there are matters that pick up the system mainly from the distribution panel on out, isn't that right?"

The witness answered, "Yes." This evidence was useful to the court because, as we have hitherto shown by quotation from the memorandum opinion of the trial judge, he said, in part:

"For the purposes of this decision, this court is starting with the first distribution panel which connects at a distance of some 75 feet from the meter loop panel."

Upon cross-examination, Rorberg was again handed defendant's exhibit No. 2 RH, and requested to ignore all the items that were used for the clothing racks and light globes which had been held nonlienable in the opinion in 31 Wn. (2d), and the following question was then propounded to him:

"Q. I want you to exclude those items from your mind; can you do that? Can you do that? Then I want you to state how much of the labor and materials, exclusive of those items, were used in the branch circuits, if you know. A. I would say the rest of it. Q. The rest of it would be used in the branch circuits? MR. BROWN: No, just a minute. MR. GEORGE: Let him answer. MR. BROWN: I want him to answer. You say the rest of it was used in or not used in— THE WITNESS: I'd say it would be used in branch circuit wiring."

The defendant also called another witness, who had not testified at the first hearing, Mr. R. J. Franks, a member of the firm of Maxwell and Franks, which, during the greater part of the past thirty years, had been engaged in electrical contracting and installation in Spokane. Mr. Franks was handed exhibit No. 2 RH, and testified that he had checked it over before taking the witness stand. He was then asked the following question:

"Q. And calling your attention to the typewritten items set forth on those six sheets, I wish you would tell the Court, whether there is anything in those six sheets that has to do

with meter loop, such as was installed by Mr. Bunn in the Madison Hotel."

To that question Mr. Franks responded:

"A. Well, I know, sir, that the wiring outlined here is all of a very comparatively small size, and none would be adequate for a meter loop in the premises. Therefore, the only conclusion that I can come to is that the items set forth here are for the branch circuit wiring within the premises."

It was held, in our former opinion, that the branch circuit wiring, to tie the circuits to the meter and panel, was mandatory under the lease, and this testimony of Mr. Franks, therefore, materially assisted the trial court in determining which labor and material was used in performing the work which was mandatory under the lease and which was permissive. It was for that purpose the case was remanded for the taking of additional testimony.

On May 16, 1949, the trial court entered judgment for the plaintiff for $574.69, and interest at six per cent from the 27th day of January, 1947, plus sixty cents for filing the claim of lien, plus attorneys' fees in the sum of three hundred dollars, together with plaintiff's costs and disbursements.

On the same day the judgment was signed, plaintiff filed a motion requesting the court for an order awarding plaintiff a reasonable attorney's fee in the event The Madison Corporation appealed to the supreme court. This motion was based upon Rem. Rev. Stat., § 1141 [P.P.C. § 180-25], which, referring to lien foreclosures, reads, in part, as follows:

"The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior and supreme courts."

On May 28, 1949, the plaintiff was awarded, by an order of the court, "an additional attorneys' fee of One Hundred Dollars ($100.00) for the taking of additional testimony in superior court."

. Appellant makes no specific assignment of error as to that order, but says, in its brief:

"While the $100.00 additional attorney's fees are not a part of this case, yet they apparently purport to be a part of the Judgment. We feel that inasmuch as it is intended by the trial court and respondent to be a part of this Judgment, the court should deal with it accordingly."

We will do so. The judgment from which this appeal was taken, including the order of May 28, 1949, awarding the respondent an additional attorney's fee of one hundred dollars will stand affirmed. It is so ordered.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.