# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STEVEN LODIS and DEBORAH LODIS, a marital community,

Appellants,

v.

CORBIS HOLDINGS, INC., a Washington corporation; CORBIS CORPORATION, a Nevada corporation; and GARY SHENK, an individual,

Respondents.

DIVISION ONE

No. 72342-1-I

PUBLISHED OPINION

FILED: December 28, 2015

DWYER, J. — Trials matter. The results of trials matter. The manner in which a trial takes place, the evidence admitted, and the judicial rulings made all matter. In this case, the plaintiff, Steven Lodis, being already unhappy with the results of two separate jury trials arising from causes of action asserted in the complaint herein, finds himself similarly disaffected by the result of the third jury trial in this matter. In an effort to obtain yet a fourth jury trial in this cause, Lodis seeks to recharacterize and redefine numerous discretionary rulings made by the trial judge. As should be the case with all endeavors of this type, Lodis's entreaty "now meets the implacable gaze of the appellate court."[1] We affirm.

---

[1] Green v. Normandy Park Riviera Section Cmty. Club, 137 Wn. App. 665, 680, 151 P.3d 1038 (2007).

No. 72342-1-I/2

I

*1. Lodis Sues Corbis; His Claims are Dismissed by the Trial Court or Rejected by the First Jury; A Second Jury Finds That Lodis Breached His Fiduciary Duty and Awards Damages to Corbis; Lodis Appeals.*

We summarized the facts preceding the first appeal herein in Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 292 P.3d 779 (2013).[2]

Corbis Corporation supplies digital images and stock photography worldwide. Steven Lodis was hired in 2005 by then-chief-executive-officer (CEO) Steve Davis to serve as vice president of worldwide human resources (HR) for Corbis. In July 2007, 37 year old Gary Shenk replaced Davis as CEO. Davis expressed concerns to Shenk about Lodis's performance. Instead of terminating Lodis, Shenk appointed Lodis to his nine person executive management team. Lodis was 55 at the time of the promotion. He initially received positive performance reviews from Shenk.

After becoming CEO, Shenk made many comments indicating his preference for younger workers. He talked about older workers being "out of touch," "an old-timer," "grandmotherly," or "the old guy on [the] team." Shenk also expressed interest to Lodis in hiring younger workers for his executive team.

Lodis spoke with Shenk on several occasions about Shenk's age related comments. Lodis explained that there was a growing concern among Corbis employees about Shenk's comments. As the highest ranking HR officer at Corbis, Lodis reminded Shenk that age should not be a factor in hiring or firing employees. Lodis explained later that he admonished Shenk, because he was "trying to protect [him]." In late 2007, Lodis expressed his concern about Shenk's comments to Corbis General Counsel Jim Mitchell. Around that same time, in late 2007 or possibly January 2008, Shenk promoted Lodis to senior vice president. Lodis also received a pay raise and incentive bonus at that time.

In January 2008, Shenk organized executive team members and an independent consultant to conduct Lodis's annual performance review. The parties dispute the circumstances surrounding that performance review. Lodis alleges that Shenk specifically recruited Lodis detractors to compile a list of Lodis's faults and reasons to fire Lodis, because of Lodis's complaints to Shenk about the possible age discrimination. Corbis counters that

---

[2] Because the first appeal concerned, in part, the trial court's grant of summary judgment dismissal of Lodis's retaliation claim, our factual summary recited the facts in the light most favorable to Lodis. Lodis, 172 Wn. App. at 846.

- 2 -

the independent consultant found Shenk's reviews to be "off the charts negative," which precipitated Shenk putting Lodis on probation.

Part of Lodis's probation required him to meet and discuss his working relationships with his colleagues. Shenk terminated Lodis for cause on March 26, 2008, for failing to meet the terms of his probation. Lodis allegedly lied to Shenk about meeting with the people who reported directly to him and failed to improve his relationship with them. Corbis claims this is the actual reason for Lodis's termination, along with ongoing performance issues and retaliation against another employee regarding a sexual harassment claim. Lodis counters that the performance review and probation were pretextual in order to fire Lodis for his complaints about Shenk's purported age discrimination.

Three months after his termination, Lodis sued Corbis and Shenk, alleging age discrimination under RCW 49.60.180 and retaliation under RCW 49.60.210. Judge Michael Hayden granted Corbis's motion for summary judgment on the retaliation claim. . . . At trial, Judge Bruce Heller denied . . . Lodis's requests to . . . reinstate his retaliation claim.

. . . .

During discovery, Corbis . . . discovered that Lodis failed to record any vacation time in the payroll system during his tenure, but accepted a payout of $41,155 plus a 401(k) match of $1,235 for 329 hours of accrued but unused vacation time. Based on this evidence, Corbis counterclaimed against Lodis for breach of fiduciary duty, unjust enrichment, and fraudulent misrepresentation. At trial, Mary Tomblinson, Corbis's payroll coordinator and HR system analyst, testified that Lodis used at least 35 more vacation days than he was entitled to. A summary of her analysis of those records was also admitted into evidence.

Before the first trial, the trial court refused to decide as a matter of law whether Lodis owed a fiduciary duty, instead leaving the issue for the jury. The jury found that Corbis had not engaged in age discrimination. It found in favor of Lodis on the unjust enrichment and fraud counterclaims. However, the jury found that Lodis owed a fiduciary duty and breached that duty, but awarded no damages. The trial court granted a new trial on Corbis's breach of fiduciary duty counterclaim based on this incongruous result of liability but no damages.

Before the second trial, Corbis moved for partial summary judgment to establish that Lodis was an officer with fiduciary duties. In its reply brief to that motion, Corbis introduced corporate resolutions indicating Lodis's status as an officer. Based on this evidence, Judge Heller found as a matter of law that Lodis was an officer.

> The second jury found that Lodis . . . did breach his fiduciary duty by failing to record any vacation time and accepting the payout. The jury awarded damages in the full amount of the vacation payout: $42,389.

Lodis, 172 Wn. App. at 842-46 (footnote omitted).

*2. Following Appeal, Lodis's Retaliation Claim is Remanded for Trial Before A Third Jury.*

On appeal following the second jury trial, we affirmed the prior judgments and jury verdicts regarding the age discrimination claim and the breach of fiduciary duty counterclaim, but reversed Judge Hayden's order granting summary judgment dismissal of Lodis's retaliation claim. Lodis, 172 Wn. App. at 852. As a result, the retaliation claim was remanded for what would be the third trial in this action, held before Judge Heller in May 2014.

*3. Lodis's Retaliation Claim is Premised Upon Five Alleged Admonishments of Shenk.*

To establish a claim for retaliation under RCW 49.60.210, Lodis needed to prove that he had engaged in certain protected activity and that Corbis, in turn, took adverse employment action against him for having done so. Lodis, 172 Wn. App. at 846-47. Lodis alleged that his protected activity was comprised of admonishing Shenk on five separate occasions for making "ageist" comments. Corbis and Shenk denied that any of these admonishments ever occurred.

Lodis testified that the first of the five alleged admonishments occurred sometime in the spring of 2007, after Shenk allegedly referred to Corbis's then-director of compensation and benefits as the "old guy" on Lodis's human resources team. Lodis testified that he asked Shenk to "stop referring to [the employee] as 'the old man on the team.'" Shenk denied ever referring to the

employee in that manner or ever being admonished by Lodis for doing so.

Lodis next testified that in the spring or summer of 2007, he admonished Shenk for a second time after Shenk referred to his new executive team as a "young team,"[3] which was brought to Lodis's attention by Corbis's then-human resources manager. Lodis also testified that he again admonished Shenk in August or September 2007 for referring to his executive team as a "young team," after Lodis (he claimed) discussed the issue with Corbis's then-CFO. Further, Shenk admitted that he referred to his executive team in that manner but stated that it had nothing to do with age and, rather, was meant "to express the passion, energy, and newness, the new thinking that those team members brought to the table." Further, Shenk denied that Lodis had ever discussed this issue with him.

Lodis further testified that, in approximately November 2007, he admonished Shenk for a fourth time after Shenk referred to a Corbis employee— who had been identified for possible termination as part of a reduction in force— as "old." Shenk denied ever referring to the employee in that manner and denied that Lodis had ever discussed this issue with him.

Finally, Lodis testified that, in late November or early December 2007, he admonished Shenk for a fifth time after Shenk expressed that he wished to replace the then-senior vice president of Corbis's "Green Light Division" with a "young Hollywood type." Shenk denied that he sought to replace the employee with a "young Hollywood type," although he acknowledged that he considered an

---

[3] The majority of the members of Shenk's executive team were over 40 years of age and several were over 50.

applicant for employment who resided in the Hollywood, California area.[4] Shenk again denied that Lodis ever expressed any concerns regarding this issue to him.

Lodis testified that, in early December 2007, he reported his concerns about Shenk's comments to Jim Mitchell, Corbis's then-general counsel. Mitchell denied that this conversation ever occurred. In any event, Lodis admitted that he had no knowledge as to whether Mitchell informed Shenk of his conversation with Lodis.

At trial, Lodis introduced no written documents or corroborating testimony evidencing that any of the claimed admonishments took place.[5]

*4. The Trial Court Enters Orders In Limine Restricting the Evidentiary Scope of the Trial to Lodis's Retaliation Claim.*

Prior to commencement of the third trial, Corbis filed motions in limine seeking to limit the scope of the trial to the one remaining claim at issue. Specifically, Corbis moved to preclude Lodis from attempting to use irrelevant and prejudicial evidence of alleged age discrimination, which had already been rejected by the jury in the first trial. Corbis also moved to preclude Lodis from attempting to relitigate the issue of whether he had breached a fiduciary duty owed to Corbis by failing to record vacation time—an issue central to Corbis's after-acquired evidence defense. Judge Heller granted each motion and entered orders limiting the admission of this evidence.

---

[4] This applicant was approximately the same age as the employee that, Lodis testified, Shenk sought to replace on account of his age.

[5] Lodis claims that he maintained documentation of the admonishments in his Corbis office files but that Corbis "destroyed" the documents after Lodis brought suit. At no time did Lodis seek relief from the trial court for such alleged spoliation of evidence. Corbis produced Lodis's notes during discovery and vehemently denied destroying or withholding any documents.

a. *The Trial Court Orders that Evidence of Alleged Age
Discrimination Be Limited to the Five Alleged Admonishments.*

In its motion to preclude admission of certain evidence of alleged age
discrimination, Corbis argued that evidence of alleged age discrimination not
related to Lodis's claimed admonishments was inadmissible under the legal
doctrines of law of the case and collateral estoppel, as well as pursuant to the
applicable rules of evidence. Judge Heller did not accept Corbis's law of the
case or collateral estoppel arguments but did grant Corbis's motion based upon
its evidentiary arguments, reasoning as follows:

> The issue in the first motion is whether the same evidence of age
> discrimination that was introduced in the first trial to prove that
> Lodis' termination was based on his age is now admissible to prove
> retaliatory discharge. Lodis cites Brundridge[6] for the proposition
> that an employer's treatment of other employees is admissible to
> show retaliatory discharge. That's true, but the treatment of the
> other employees in Brundridge was retaliation, not any type of
> discriminatory behavior. Thus, Brundridge would allow Lodis to
> introduce evidence of retaliatory behavior by Shenk towards other
> employees. Lodis will also be permitted to introduce evidence
> concerning the alleged discriminatory behavior by Shenk that Lodis
> admonished Shenk about. But alleged ageist statements by Shenk
> that Lodis did not address with Shenk are inadmissible. Counsel
> will recall that during the first trial the court ruled that alleged sexist
> remarks by Shenk were not admissible to prove age discrimination.
> The same logic applies here with respect to the connection
> between ageist remarks and retaliatory motives.

b. *Lodis Repeatedly and Surreptitiously Introduces Evidence
Excluded by the Trial Court's Order, Prompting Admission of the First Jury
Verdict.*

In conjunction with his ruling that Lodis would be limited to introducing
evidence of alleged admonishments he made to Shenk, Judge Heller initially
ruled that evidence of the age discrimination verdict from the first trial would be

---

[6] Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 191 P.3d 879 (2008).

inadmissible. However, during trial, Lodis proceeded to introduce broad evidence and testimony of alleged age discrimination in contravention of the trial court's order. For example, Lodis repeatedly testified about and referred to the ages of members of Shenk's executive team and suggested that Shenk was motivated to make age-based employment decisions, even though there was no allegation that Lodis ever admonished Shenk for such actions. Lodis also suggested that Shenk had made "ageist" comments for which Lodis did not admonish him.

On these occasions, Corbis objected to the admissibility of such evidence and asserted that, by suggesting that Shenk was an "ageist," Lodis had "opened the door" to the admissibility of evidence of the age discrimination verdict. The trial court repeatedly upheld its prior ruling excluding evidence of the age discrimination verdict,[7] while also cautioning Lodis's counsel that "he was taking a bit of a risk by going down th[at] road."

Ultimately, on the fifth day of trial, after Lodis repeatedly elicited testimony suggesting both that Shenk was biased against older workers and had engaged in age discrimination, the trial court concluded that Lodis had opened the door to admission of evidence of the age discrimination verdict.

> I've spent a fair amount of time thinking about the issue of whether the prior jury verdict regarding age should come into evidence. As you know, my primary concern in ruling that it should stay out is I was concerned, as I indicated this morning, that if the jury was aware of that verdict, that they might make shortcuts and, for example, decide that if there is no basis for the age claim, then there is no basis for the retaliation claim.

---

[7] "I'm not going to make any rulings at this point as to whether or not the door has been opened on the age claim. At this point, I'll hold the line on that as well as what happens tomorrow."

However, there has been evidence, quite a bit of evidence, regarding age within the context of the retaliation claim. I'm thinking particularly of the evidence that came in yesterday in the cross-examination of Mr. Shenk regarding the fact that Mr. Shenk turned to Gillett, Brotman, and whoever the third member was of the executive team who were the younger members of the team, and the argument was that they wouldn't have stood up to him. That was one inference that could be drawn from it. I think that's an example of the jury hearing evidence regarding age and not knowing what to do with it.

[Corbis's counsel] has persuaded me that just as Mr. Lodis needs to be protected from what I refer to as "shortcuts," I think Corbis also needs to be protected from the opposite thinking, which is, Well, we think that Mr. Shenk engaged in age discrimination by going to the younger members of the team, for example.

So I think the jury needs some kind of a limiting instruction that tells them that the two issues are entirely separate.

After ruling that evidence of the jury verdict was admissible, the trial court gave the jury a limiting instruction as follows:

Members of the jury, during this trial, you have heard that a prior jury found Mr. Lodis's termination was not the result of age discrimination. You must keep in mind that this is a retaliation case, not an age discrimination case. The issue of whether the defendants engaged in age discrimination is not before you and should not be considered by you in evaluating Mr. Lodis's retaliation claim.

With respect to retaliation, the issues you must decide are, one, whether Mr. Lodis reasonably believed that Mr. Shenk made ageist comments; and, two, whether Mr. Lodis's alleged expressions of concern to Mr. Shenk about these comments was a substantial factor in his termination.

That concludes the instruction. Thank you.

*c. The Trial Court Precludes Lodis from Relitigating Whether He Breached a Fiduciary Duty.*

Corbis's motion in limine regarding Lodis's prior breach of fiduciary duty sought to prohibit Lodis from denying that such breach had occurred—a fact established in two prior trials before two prior juries. Corbis contended that Lodis's breach of fiduciary duty was directly relevant to its after-acquired

evidence defense, in that Lodis's misconduct would have otherwise led to a justified termination, thereby limiting any damages he could recover for what he was alleging to be a wrongful, retaliatory termination. In litigating this defense, Corbis argued that Lodis should be prohibited under the legal doctrines of law of the case and collateral estoppel from denying that his failure to record vacation time constituted a breach of his fiduciary duties to Corbis.

Judge Heller granted Corbis's motion, reasoning as follows:

> As to the second motion, the jury's verdict against Lodis regarding breach of fiduciary duty is that law of the case. Lodis will therefore not be permitted to re-litigate the issue by arguing, for example, that the acceptance of the vacation pay-out after his termination precludes a breach of fiduciary duty claim. The focus at trial will be on whether Corbis would have terminated Lodis had it known about Lodis' failure to record vacation time.

Judge Heller later ruled that evidence of the verdict from the second jury on Corbis's breach of fiduciary duty claim was relevant and, hence, admissible under the rules of evidence, reasoning as follows:

> There are some other prior jury verdicts. I am going to allow the jury to hear that a prior jury found that Mr. Lodis violated his breach of fiduciary duty by failing to record his vacation time . . . .
> My reasoning for doing that is one of the issues in the after-acquired evidence defense that will be raised by Corbis is that they have to show that Mr. Lodis's conduct was serious. And then, of course, they have to show that if they had known about it, they would have terminated him.
> The fact that a prior jury found that he breached his fiduciary duty is clearly relevant to the seriousness issue.

5. *The Trial Court Allows The Jury To Consider Corbis's After-Acquired Evidence Defense.*

Prior to the third trial, Lodis moved for judgment as a matter of law under CR 50 on Corbis's after-acquired evidence defense.[8] The trial court denied Lodis's motion, reasoning as follows:

> I wanted to address a number of pending motions. The first is [Lodis's] motion for judgment as a matter of law on defendants' after-acquired evidence defense.
>
> And the issue that is being argued is whether or not there is any actual employment practice of terminating employees for not recording vacation.
>
> [Lodis's counsel] argues that in the absence of any evidence of that, there can be no after-acquired evidence defense; it can't be based on a statement that "I would have terminated somebody."
>
> The problem that I have with that argument is that even if there has not been a termination based on this kind of conduct, the question is: Has there ever been this kind of conduct in the past that would warrant termination?
>
> I know that there are disputes between the parties as to what the practice has been and whether or not other employees have failed to record vacation. As I understand Corbis's argument, there is a difference between not recording an insignificant number of days, however one wants to define that, and this situation.
>
> I think that question really needs to be decided by the jury. So based on the reasons that I have already given previously, I will allow the after-acquired evidence to go to the jury.[9]

6. *The Third Jury Rules in Corbis's Favor, Rejecting Lodis's Retaliation Claim; The Trial Court Denies Lodis's Motion For A New Trial.*

Following an eight-day trial, the third jury returned a verdict in Corbis's favor, finding that Corbis had not engaged in retaliation. Lodis filed a motion for

---

[8] Corbis had previously moved for partial summary judgment on its after-acquired evidence defense, arguing that the defense had been established, as a matter of law, because there had been a finding that Lodis breached his fiduciary duty, and there was undisputed evidence that this breach was a terminable offense. The court acknowledged the validity of Corbis's position, yet found that there remained questions of fact for a jury, explaining that "[t]he question at this stage is not whether Corbis can establish the elements of the after-acquired evidence defense at trial, but whether the evidence is so strong that no reasonable juror could find otherwise."

[9] After the jury rendered its verdict, Lodis filed a renewed CR 50 motion on Corbis's after-acquired evidence defense on identical grounds, which Judge Heller similarly denied.

a new trial under CR 59. The trial court denied Lodis's motion and entered judgment for Corbis. Lodis now appeals for the second time.

II

Lodis first contends that the trial court erred by "precluding" him from presenting evidence of his "reasonable belief" of age discrimination and by admitting evidence of the age discrimination verdict in Corbis's favor. This is so, he asserts, because the evidence of his reasonable belief was relevant but evidence of the verdict against him was both irrelevant and unfairly prejudicial. We disagree.

The evidentiary principles of relevancy and prejudice are familiar ones.

> All relevant evidence is admissible. ER 402; Medcalf v. Dep't of Licensing, 83 Wn. App. 8, 16, 920 P.2d 228 (1996), aff'd, 133 Wn.2d 290, 944 P.2d 1014 (1997). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; Medcalf, 83 Wn. App. at 16. Evidence tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, is relevant evidence. Lamborn v. Phillips Pac. Chem. Co., 89 Wn.2d 701, 706, 575 P.2d 215 (1978); Maicke v. RDH, Inc., 37 Wn. App. 750, 752, 683 P.2d 227 (1984).

Hayes v. Wieber Enters., Inc., 105 Wn. App. 611, 617, 20 P.3d 496 (2001).

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. "Evidence may be unfairly prejudicial under ER 403 if it is evidence 'dragged in' for the sake of its prejudicial effect or is likely to trigger an emotional response rather than a rational decision among the jurors." Hayes, 105 Wn. App. at 618 (citing Carson v. Fine, 123 Wn.2d 206, 223-24, 867 P.2d 610 (1994)). "The ability of the danger

of unfair prejudice to substantially outweigh the probative force of evidence is 'quite slim' where the evidence is undeniably probative of a central issue in the case." Carson, 123 Wn.2d at 224 (quoting United States v. 0.161 Acres of Land, 837 F.2d 1036, 1041 (11th Cir. 1988)). "[T]he burden of showing prejudice is on the party seeking to exclude the evidence." Carson, 123 Wn.2d at 225.

"ER 403 must be administered in an evenhanded manner." Carson, 123 Wn.2d at 225. "Because of the trial court's considerable discretion in administering ER 403, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion." Carson, 123 Wn.2d at 226.

Lodis assigns error to two trial court rulings regarding the admissibility of purported evidence of Shenk's alleged age discrimination. Each ruling is addressed, in turn, below.

However, as a preliminary matter, we note that Lodis confuses the issue by resting his claims on the trial court's rulings in limine, even though the trial court later reconsidered the pertinent rulings in the course of the proceedings based on the parties' conduct at trial. As our Supreme Court has explained:

> A judge may reverse or modify a pretrial ruling at any time prior to the entry of final judgment. See State v. Kinard, 39 Wn. App. 871, 873, 696 P.2d 603, review denied, 103 Wn.2d 1041 (1985). When this happens, a party must demonstrate the trial ruling itself was erroneous in order to secure a reversal. See State v. Brooks, 20 Wn. App. 52, 60, 579 P.2d 961 (if evidence is admitted at trial contrary to a pretrial order in limine, reversal is not required unless the trial ruling was erroneous), review denied, 91 Wn.2d 1001 (1978).

Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 37, 864 P.2d 921 (1993). Thus, we consider only the trial court's final rulings regarding the evidence at issue.

A

Lodis first asserts that the trial court erred by "precluding" him from presenting evidence of his "reasonable belief" that he opposed discriminatory conduct.[10]

As we noted in our prior decision herein:

> The WLAD [Washington Law Against Discrimination] protects employees engaged in statutorily protected activity from retaliation by their employer. See RCW 49.60.210. It provides:
>
> > It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against *any* person because he or she has *opposed any practices forbidden by this chapter*, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.
>
> RCW 49.60.210(1) (emphasis added).

Lodis, 172 Wn. App. at 847-48. The so-called "opposition clause," which provides protection when an employee opposes forbidden practices, is at issue here.

"To establish a prima facie case of retaliation under the WLAD, the employee must show that (1) he engaged in statutorily protected activity; (2) the employer took some adverse employment action against the employee; and (3)

---

[10] Lodis's briefing on this issue also argues that neither the doctrine of collateral estoppel nor the law of the case doctrine provides a basis for the challenged trial court ruling. Because the trial court did not rely on either doctrine in rendering its decision, and Corbis does not contend on appeal that either doctrine applies, we do not further address these arguments.

there is a causal link between the protected activity and the adverse action."[11]

Lodis, 172 Wn. App. at 846. "'[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the "opposition clause" whether or not the practice is actually discriminatory.'" Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 619, 60 P.3d 106 (2002) (alteration in original) (internal quotation marks omitted) (quoting Graves v. Dep't of Game, 76 Wn. App. 705, 712, 887 P.2d 424 (1994)); accord Lodis, 172 Wn. App. at 852 ("An employee need only show he had an objectively reasonable belief that his employer violated the law, not that the employer did in fact violate the law." (citing Ellis v. City of Seattle, 142 Wn.2d 450, 460-61, 13 P.3d 1065 (2000))).

As a preliminary matter, contrary to Lodis's assertion, he was not "precluded" from presenting evidence of his reasonable belief that he was opposing discriminatory conduct. The record herein demonstrates that, in fact, Lodis was permitted to present evidence concerning every one of the five instances of allegedly discriminatory conduct that he claimed to have openly opposed.

Notwithstanding that the trial court's ruling permitted him to present significant evidence of allegedly discriminatory conduct by Shenk, Lodis contends that the trial court erred by prohibiting him from presenting evidence of each instance of allegedly discriminatory conduct of which he was aware. Lodis's contention overlooks the trial court's discretion to exclude minimally

---

[11] A retaliatory motive need not be the employer's sole or principal reason for the discharge so long as the employee establishes that retaliation was a substantial factor. Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wn.2d 46, 68-69, 821 P.2d 18 (1991); Kahn v. Salerno, 90 Wn. App. 110, 128-29, 951 P.2d 321 (1998).

relevant and highly prejudicial evidence. Indeed, the relevance of this evidence is questionable. The fact that Lodis did not think that this conduct, unlike the conduct that he chose to oppose, was worth mentioning, suggests that evidence of the conduct lacks probative value as to whether Lodis reasonably believed that he was opposing discriminatory conduct on other occasions. In any case, because the excluded evidence did not concern conduct that Lodis openly opposed, it was far from the core of Lodis's claim that he was discharged in retaliation for opposing discriminatory conduct.

Moreover, permitting Lodis to present unlimited evidence of alleged discriminatory conduct by Shenk would have risked significant, unfair prejudice to Corbis. Such evidence would have left the unfair—and purely collateral— impression that Shenk was an ageist. Furthermore, permitting Lodis to present such evidence would have risked jury confusion regarding whether this was actually an age discrimination case, rather than the retaliation case that it was promoted to be. At a minimum, the presentation of this evidence by Lodis, the presentation of rebuttal evidence by Corbis, and the consideration of the sum total of that evidence by the jury would have imposed undue cost, delay, and inefficiency on the proceedings.

The trial court did not abuse its discretion by denying Lodis carte blanche to introduce evidence of alleged discriminatory conduct, regardless of its connection to his claim.

B

Lodis next asserts that the trial court erred by allowing Corbis to present evidence of the first jury's verdict against Lodis on his age discrimination claim, including the actual verdict form.

Pursuant to the "long-recognized" "open door" rule, "[g]enerally, once a party has raised a material issue, the opposing party is permitted to explain, clarify, or contradict the evidence." State v. Berg, 147 Wn. App. 923, 939, 198 P.3d 529 (2008), abrogated on other grounds, State v. Mutch, 171 Wn.2d 646, 254 P.3d 803 (2011). Our Supreme Court explained the rule's rationale thusly:

> It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it. Rules of evidence are designed to aid in establishing the truth. To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths.

State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

A review of the proceedings leading up to the pertinent trial court ruling is illuminating.

Judge Heller initially ruled that the age discrimination verdict was inadmissible. Corbis did not contest or otherwise object to the trial court's ruling, conceding that the verdict was irrelevant to the issue of whether Corbis retaliated against Lodis for having allegedly admonished Shenk for making age-based comments. As the trial progressed, Lodis repeatedly introduced testimony concerning alleged age discrimination about which he did not allegedly admonish Shenk, in violation of the trial court's ruling. Indeed, even while upholding his

ruling that the age discrimination verdict was inadmissible, throughout the proceedings, Judge Heller repeatedly cautioned Lodis that he was "taking a bit of a risk" in persisting in his efforts to introduce additional evidence of alleged age discrimination.

As a direct result of Lodis's insistence on introducing evidence that unfairly left the jury with the implication that Shenk was biased against older workers, Judge Heller reversed his prior ruling mid-trial and allowed Corbis to introduce the age discrimination verdict in order to "protect" Corbis against any unfair conclusion that Shenk had engaged in age discrimination. Specifically recognizing that Lodis had introduced "quite a bit of evidence regarding age within the context of the retaliation claim," Judge Heller reasoned that admission of the prior jury verdict was necessary because Corbis was entitled "to be protected from . . . [jury] 'shortcuts' . . . [inferring] that Mr. Shenk engaged in age discrimination." In order to remedy any possible jury confusion resulting from the introduction of the age discrimination evidence, the trial court gave the jury a limiting instruction emphasizing that the focus of the trial was Lodis's retaliation claim, not collateral allegations of age discrimination.

The trial court's ultimate ruling permitting Corbis to present evidence of the first jury's verdict, in order to rebut Lodis's created implication that Shenk was an "ageist," was both prudent and even-handed. The challenged ruling, which was consistent with the "open door" rule, was not an abuse of the trial court's discretion.

III

Lodis next contends that the trial court erred by invoking the law of the case doctrine to prevent him from presenting evidence with the goal of relitigating the second jury's breach of fiduciary duty verdict. Relatedly, he contends that evidence of the second jury's verdict was both irrelevant to Corbis's after-acquired evidence defense and unfairly prejudicial. His contentions are unavailing.

We apply the same principles of relevancy and prejudice summarized above.

A

Lodis first asserts that the trial court erred by prohibiting him, based on the law of the case doctrine, from relitigating the question of whether he breached a fiduciary duty owed to Corbis.

The law of the case doctrine "is often confused with other closely related doctrines," Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005), all of which promote predictability, uniformity, consistency, finality, and efficiency in the law, including stare decisis, collateral estoppel (i.e., issue preclusion), and res judicata (i.e., claim preclusion). Because this case involves an attempt to relitigate a prior claim, the doctrine most related to the law of the case as it applies to these circumstances is res judicata.

A primer on the relationship between these doctrines is helpful.

> Res judicata generally bars not only attempts to relitigate matters actually litigated, but also all other matters that should have been asserted in the earlier proceeding. In re Estate of Siebrasse, [ ] 722 N.W.2d 86, 90 [(S.D. 2006)]. The "law of the case" doctrine,

on the other hand, stands for the general rule that "a question of law decided by the [appellate] court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or reversed on a second appeal when the facts and the questions of law presented are substantially the same." Id. *"The 'law of the case' doctrine is the weaker corollary of the doctrines of res judicata, collateral estoppel[,] and stare decisis and is intended to prove some degree of certainty where those doctrines could not yet apply."* Id.

As we previously noted:

Although the principles of the law of the case doctrine and res judicata are similar, their application differs. The law of the case rule involves the effect of a previous ruling within one action on a similar issue of law raised subsequently within the *same* action. The rules of res judicata apply to previous rulings in an action on a similar determination in a *subsequent* action.

Id. Thus, "[w]here successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved." Id.

. . . .

"The 'law of the case' doctrine is intended to afford a measure of finality to *litigated issues*." Grynberg Exploration Corp. v. Puckett, [ ] 682 N.W.2d 317, 322 [(S.D. 2004)]. This doctrine has many policy considerations: "(1) to protect settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." In re Estate of Jetter, [ ] 590 N.W.2d 254, 258 [(S.D. 1999)]. We have cautioned, however, that "the 'law of the case' [doctrine] should not be used to perpetuate an erroneous decision[.]" Grynberg, [ ] 682 N.W.2d at 322. Indeed, the doctrine "is not a rigid rule, and will not be invoked on a second appeal if the prior decision is palpably erroneous and if it is competent for the court to correct it on the second appeal." Siebrasse, [ ] 722 N.W.2d at 91. Furthermore, "a court may reopen a previously resolved question if the evidence on remand is substantially different or if a manifest injustice would otherwise result." Id.

In re Pooled Advocate Trust, 813 N.W.2d 130, 139 (S.D. 2012) (some emphasis

added).

Thus, the essential difference between the doctrines is that the law of the case doctrine applies to successive proceedings in the same case, whereas res judicata is applicable to successive proceedings in different cases. See Pepper v. United States, 562 U.S. 476, 506, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) ("'[A]s most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case*.'" (quoting Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983)) (emphasis added))); Lusardi v. Curtis Point Prop. Owners Ass'n, 86 N.J. 217, 226 n.2, 430 A.2d 881 (1981) (The law of the case doctrine "applies only to proceedings prior to the entry of a final judgment. After that, rules of res judicata determine whether a prior determination of law or fact is binding.").

"'The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal.'" Arceneaux v. Amstar Corp., 66 So.3d 438, 448 (La. 2011) (quoting Petition of Sewerage & Water Bd. of New Orleans, 278 So.2d 81, 84 (La. 1973)); accord Mun. of San Juan v. Rullan, 318 F.3d 26, 29 (1st Cir. 2003) ("[The law of the case] doctrine has two components: 'One branch involves the so-called mandate rule [ ]which, with only a few exceptions, forbids, among other things, a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case[ ]. The other branch

. . . provides that unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.'" (quoting Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002)) (alteration in original)).

In Washington, the principles of the law of the case doctrine are memorialized in the Rules of Appellate Procedure. Roberson, 156 Wn.2d at 41; State v. Worl, 129 Wn.2d 416, 424, 918 P.2d 905 (1996) (describing RAP 2.5(c) as "codifying the law of the case doctrine"). RAP 2.5, which relates to the scope of appellate review, provides, in pertinent part:

> **(c) Law of the Case Doctrine Restricted.** The following provisions apply if the same case is again before the appellate court following a remand:
> (1) *Prior Trial Court Action.* If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.
> (2) *Prior Appellate Court Decision.* The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

"By using the term 'may,' RAP 2.5(c)(2) is written in discretionary, rather than mandatory, terms. The plain language of the rule affords appellate courts discretion in its application." Roberson, 156 Wn.2d at 42; see Folsom v. County of Spokane, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988).

The same discretion is not afforded to the trial court on remand from the appellate court. "'Upon the retrial, the parties and the trial court [are] all bound by

- 22 -

the law as made by the decision on the first appeal. On appeal therefrom, the parties and this court are bound by that decision unless and until authoritatively overruled.'" Bunn v. Bates, 36 Wn.2d 100, 103, 216 P.2d 741 (1950) (quoting Baxter v. Ford Motor Co., 179 Wash. 123, 127, 35 P.2d 1090 (1934)). This principle is reflected in RAP 12.2, relating to the procedure following issuance of an appellate court decision, which provides, in relevant part:

> Upon issuance of the mandate of the appellate court . . . , the action taken or decision made by the appellate court is effective and binding on the parties to the review and *governs all subsequent proceedings in the action in any court*, . . . except as provided in rule 2.5(c)(2). After the mandate has issued, the trial court may, however, hear and decide postjudgment motions otherwise authorized by statute or court rule *so long as those motions do not challenge issues already decided by the appellate court.*

(Emphasis added.)

RAP 12.2 is consistent with the general principle that "'the decision of the appellate court establishes the law of the case and it *must* be followed by the trial court on remand.'" United States v. Rivera-Martinez, 931 F.2d 148, 150 (1st Cir. 1991) (quoting 1B J. MOORE, J. LUCAS, & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (2d ed. 1991)); accord Nattah v. Bush, 770 F. Supp. 2d 193, 201 (D.D.C. 2011) ("Under the law of the case doctrine, [the trial court] may not revisit any issues that it has previously resolved, nor may it re-evaluate the merits of any disputes settled by the [appellate court] on appeal.").

Herein, Lodis sought to present evidence attacking a prior jury's verdict finding that he breached his fiduciary duty. Relitigating the jury's verdict was the only purpose for which the evidence was proffered. Importantly, Lodis had already challenged that verdict in his first appeal to this court. At that time, we

rejected Lodis's claims of error and affirmed the verdict. The jury's finding that Lodis had breached a fiduciary duty owed to Corbis by failing to record vacation time thus became the law of the case.

Because the law of the case doctrine prohibited Lodis from relitigating the jury's verdict in the trial court, whether Lodis breached a fiduciary duty owed to Corbis was not a fact at issue in the proceedings on remand. Therefore, the evidence that Lodis sought to have admitted was not material. The trial court did not abuse its discretion by excluding irrelevant evidence. To the contrary, it properly declined Lodis's invitation to undermine both the jury's verdict and the appellate court's mandate in contravention of the law of the case doctrine.

## B

Lodis next asserts that the trial court erred "in admitting testimony regarding the second jury verdict and . . . the actual second jury's verdict on Corbis' breach of fiduciary duty counter-claim." Br. of Appellant at 4.

Preliminarily, we note that Lodis's argument regarding the breach of fiduciary duty verdict is muddled. At times, it is presented as inextricably linked to Lodis's relitigation argument—that is, he seems to be arguing that, because he should have been permitted to relitigate whether he had breached a fiduciary duty owed to Corbis, the jury's verdict that he, in fact, did so lacks relevance. Given our resolution of the immediately preceding issue, to the extent that Lodis so argues, his claim fails.

At other times, Lodis seems make an argument similar to his argument regarding the first jury's age discrimination verdict—that is, he argues that, even

- 24 -

though evidence of the misconduct that constituted a breach of his fiduciary duty was admissible, evidence of the second jury's verdict, including the actual verdict form, should not have been admitted in light of the principles of relevancy and prejudice. This version of his argument was presented to the trial court.

After the trial court granted Corbis's motion precluding Lodis from relitigating the breach of fiduciary duty claim, Lodis attempted to parse the jury's finding that Lodis had failed to record vacation time from its verdict that he breached a fiduciary duty owed to Corbis, arguing:

> He [(Lodis)] cannot say that "I did not fail to record my vacation." We accept that. That has nothing to do with whether or not they get to hear breach of fiduciary duty. That's a whole separate issue because it is only relevant on the issue of after-acquired evidence. And it's not the breach that's relevant; it's the failure to record because Shenk alone will say, "I would have fired him for that."
> So I think that's pretty straightforward, Your Honor. They don't get to say breach of fiduciary duty.

Lodis's argument fails to recognize that the fact that Lodis's failure to record vacation time constituted a breach of a fiduciary duty owed to Corbis was separately relevant to Corbis's after-acquired evidence defense.

"The 'after-acquired evidence' doctrine precludes or limits an employee from receiving remedies for wrongful discharge if the employer later 'discovers' evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct." Rivera v. NIBCO, Inc., 364 F.3d 1057, 1070-71 (9th Cir. 2004) (quoting McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360-63, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995)). An employer can avoid back pay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a

preponderance of the evidence "that *the wrongdoing was of such severity* that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon, 513 U.S. at 362-63) (emphasis added); accord Janson v. N. Valley Hosp., 93 Wn. App. 892, 971 P.2d 67 (1999) (adopting after-acquired evidence defense as articulated in McKennon).

Herein, the second jury found not only that Lodis had improperly failed to record his vacation time, but also that this misconduct constituted a breach of a fiduciary duty that he owed to Corbis. As the trial court noted, this second finding significantly elevates the perceived seriousness of Lodis's misconduct. Therefore, the jury's breach of fiduciary duty verdict against Lodis was independently relevant to Corbis's after-acquired evidence defense, particularly whether Lodis's misconduct was of "such severity" that Shenk would have discharged him on that basis alone. Furthermore, given the sprawling nature of the litigation herein, the trial court's effort to limit the issues by permitting evidence of Lodis's misconduct to be presented in an abridged manner, in the context of the jury's determination that he breached a fiduciary duty, was well-founded.[12]

The trial court did not abuse its direction in admitting evidence of the second jury's breach of fiduciary duty verdict.

---

[12] The same concern for reigning in the proceedings in order to avoid jury confusion explains the trial court's decisions (1) to refuse to give an instruction on the elements of breach of fiduciary duty (a claim that, after all, was not directly at issue therein), and (2) to limit the presentation of evidence regarding the claims that had been at issue in the second trial.

IV

Lodis next contends that the trial court erred by allowing the jury to consider Corbis's "after-acquired evidence" affirmative defense. This is so, he asserts, because "Corbis presented insufficient evidence for the after-acquired evidence defense . . . to be presented to the jury." His contention is unavailing.

CR 50(a)(1), regarding motions for judgment as a matter of law, provides:

> If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue.

"Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997). "Such a motion can be granted only when it can be said, as a matter of law, that there is no competent and substantial evidence upon which the verdict can rest." State v. Hall, 74 Wn.2d 726, 727, 446 P.2d 323 (1968). "Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise." Brown v. Superior Underwriters, 30 Wn. App. 303, 306, 632 P.2d 887 (1980).

When reviewing a motion for judgment as a matter of law, appellate courts apply the same standard as the trial court. Guijosa v. Wal-Mart Stores, Inc., 144 Wn.2d 907, 915, 32 P.3d 250 (2001).

Lodis contends that he was entitled to judgment as a matter of law on Corbis's after-acquired evidence defense.

As summarized above, pursuant to the after-acquired evidence defense, an employer can avoid back pay and other remedies for wrongful discharge by coming forward with evidence of an employee's misconduct that was acquired after the discharge, but only if it can prove by a preponderance of the evidence "that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon, 513 U.S. at 362-63.

In order to carry its burden, an employer is not required "to come forward with proof that they discharged other employees for the precise misconduct at issue (though such evidence would no doubt be helpful to their case)." O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 762 (9th Cir.1996). An employer may prevail, for example, by proffering testimony that the employee would have been terminated that is "corroborated both by the company policy, which plausibly could be read to require discharge for the conduct at issue here, and by common sense." O'Day, 79 F.3d at 762.

Here, Corbis presented substantial evidence based upon which the jury could have rendered a verdict in its favor. Corbis's "Code of Conduct" expressly "forbid[s] certain behaviors [ ] based on common sense guidelines," including (1) "[f]alsification or misrepresentation of company records . . . includ[ing] . . . time reports"; (2) "[v]iolation of any Corbis policy";[13] and (3) "[a]ny activity that has an

---

[13] Lodis's failure to record vacation time violated Corbis's time reporting policy.

adverse effect on the company's interests." Shenk testified that engaging in any of these impermissible behaviors is a ground for termination at Corbis and that, as such, he would have terminated Lodis when he learned of his failure to record any vacation time.[14] The fact that a prior jury found that Lodis's conduct constituted a breach of his fiduciary duties of undivided loyalty and care establishes that Lodis's actions were "adverse [to] the company's interests" and underscores their severity and seriousness. Moreover, common sense suggests that a CEO would terminate the highest ranking human resources officer—the self-proclaimed "moral compass" of the company—and member of his executive team upon discovering that the executive had failed to record a single hour of vacation throughout the duration of his employment, despite taking more than 89 days off, in violation of the very policies he was responsible for enforcing.[15]

---

[14] Shenk was unequivocal that he would have terminated Lodis.
Q: If Mr. Lodis had still been employed by Corbis in October of 2008 at the time that you discovered these events, what would you have done?
A. I would have fired him.

[15] Lodis makes three assertions in support of his contention to the contrary, none of which are supported by the record.

First, he asserts that "Corbis's own witness, Vivian Farris, the senior vice president of human resources (and Mr. Lodis's replacement) testified on direct that it was not "a terminable offense" to fail to record vacation time, even though it was a violation of company policy." Br. of Appellant at 47. However, the report of proceedings to which Lodis cites in support of this assertion, if it exists, was not designated on appeal. Thus, we do not further address this assertion. See Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998) ("[T]he appellant bears the burden of complying with the Rules of Appellate Procedure [ ] and perfecting his record on appeal so the reviewing court has before it all the evidence relevant to deciding the issues before it. The court may decline to reach the merits of an issue if this burden is not met." (citation omitted)).

Second, Lodis asserts that "[t]he evidence showed that Corbis knew . . . that others in similar positions did the same thing." Br of Appellant at 47-48. In support of this assertion, Lodis cites to the trial court's letter ruling denying Lodis's pretrial CR 50 motion for judgment as a matter of law on Corbis's defense. However, Lodis offers no support for the proposition that, at trial, he presented any evidence that people in positions similar to Lodis engaged in comparable misconduct.

Finally, Lodis asserts that "[t]he evidence showed that Corbis knew . . . that Lodis was not recording his vacation time, and that it did not mention that as a basis for his termination or withhold his vacation payout, see Ex. 108." Br. of Appellant 47. In fact, however, Lodis cites no

Because Corbis presented substantial evidence in support of its after-acquired evidence defense, the trial court did not err by refusing to grant judgment as a matter of law thereon in Lodis's favor.[16,17]

Affirmed.

We concur:

---

evidence suggesting that Corbis was aware of Lodis's misconduct *before his termination*. The exhibit upon which Lodis relies establishes that, *after Lodis had been terminated*, Mitchell, Corbis's general counsel, was made aware that Lodis had failed to record significant vacation time.

[16] Related to this issue, Lodis also asserts that prejudicial character evidence of his failure to report vacation time should not have been presented to the jury. This argument presumably hinges on his argument that he was entitled to judgment as a matter of law on Corbis's defense, since the evidence is clearly relevant to that defense. To the extent that Lodis is intending to argue that some particular evidence, though relevant to Corbis's defense, was unfairly prejudicial, his argument fails because he does not assign error to any of the trial court's evidentiary rulings.

[17] Lodis also assigns error to the trial court's denial of his motion for a new trial but does not present argument relative to that assignment. Therefore, we do not further address this claim. Skagit County Pub. Hosp. Dist. No. 1 v. Dep't of Revenue, 158 Wn. App. 426, 440, 242 P.3d 909 (2010) ("An appellant waives an assignment of error [by] fail[ing] to present argument or citation to authority in support of that assignment.")