IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

2018 NOV 13 AM 9:54

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

LESLIE BLAKEY SPENCER and TAMMY S. BLAKEY )

Respondents/Cross Appellants, )

v. )

BADGLEY MULLINS TURNER, PLLC and DUNCAN C. TURNER )

Appellants/Cross Respondents. )

No. 76835-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 13, 2018

ANDRUS, J. — Leslie Blakey Spencer and Tammy S. Blakey sued their former attorney, Duncan Turner, and his firm, Badgley Mullins Turner, PLLC,[1] for legal malpractice, breach of fiduciary duty, and a violation of Washington's Consumer Protection Act. These claims arose out of a 2012 lawsuit and subsequent appeal in which Leslie and Tammy sought to prevent the sale of commercial property they owned with their siblings. Blakey v. Blakey, No. 71036-2-I (Wash. Ct. App. Mar. 30, 2015) (unpublished).[2]

---

[1] For clarity, Leslie and Tammy are referred to by their first names or as "the sisters," while Turner and his firm are referred to as "Turner."

[2] http://www.courts.wa.gov/opinions/pdf/710362.pdf.

Turner appeals from an adverse jury verdict, raising four main issues on appeal. First, he contends the trial court, through erroneous summary judgment rulings and evidentiary decisions, relieved the sisters of their burden to prove that without Turner's negligence, the sisters would have won the underlying case. Second, Turner argues that this court's unpublished opinion in the Blakey v. Blakey appeal should not have been admitted in the malpractice trial. Third, Turner challenges the propriety of the damages jury instruction. Finally, Turner argues his motion for a new trial should have been granted based on the sisters' counsel's misconduct.

Leslie and Tammy filed a cross appeal, raising two main issues. They argue the trial court erred in allowing Turner to assert the affirmative defense of contributory negligence. They also argue that the trial court applied an incorrect legal standard in ruling on their breach of fiduciary duty claim and denying their request for disgorgement of legal fees paid to Turner. We affirm.

## FACTS

In late 2011 and early 2012, Turner represented Leslie and Tammy in their attempt to buy out their siblings' interests in a property they co-owned and to prevent the sale of the property to a third party.

Pursuant to a co-tenancy agreement (CTA), the four siblings—Leslie, Tammy, Greg, and Glenda—owned equal shares of property located on the Duwamish River on a site the Environmental Protection Agency had designated as a contaminated Superfund site (Snopac Property). A fish processing

company, SnoPac Products, Inc., also co-owned by the siblings, had operated on the property for years.

The siblings have a lengthy history of litigation. They initially sued each other to determine the value of SnoPac Products, Inc. This dispute resulted in the entry of a monetary judgment in favor of Leslie and Tammy against SnoPac Products, Inc.[3]

Leslie and Tammy then raised concerns about Greg's use of the Snopac Property. In 2011, Greg and Glenda told the sisters they wanted to sell the Snopac Property to Manson Construction Co. (Manson), the adjacent landowner. Manson asked the siblings for permission to conduct an environmental assessment of the property. Leslie and Tammy objected, but Greg and Glenda gave Manson permission to conduct the study and park their vehicles on the Snopac Property, despite the sisters' objection.

Leslie and Tammy initiated a lawsuit, claiming that Greg and Glenda's management decisions violated the CTA. They alleged Greg and Glenda's conduct constituted a "default" under Section 12 of the CTA, giving the sisters the right to purchase Greg and Glenda's interest in the Snopac Property at a steeply discounted price.

After filing suit, Leslie and Tammy fired their first attorney and retained Turner. The day Turner began representing Leslie and Tammy, Manson delivered its formal offer to purchase the Snopac Property. Manson offered $1 million payable as "[a]ll cash at closing with no financing contingency." Manson

also offered an environmental liability indemnity initially capped at $1.5 million, which it later made unlimited (the Indemnification Match). Greg and Glenda contended that Leslie and Tammy could purchase their interests in the property under Section 13 of the CTA[4] only if they could match Manson's offer. Because they each owned a 25 percent interest, the sisters needed $500,000 to buy out Greg and Glenda's interest (the Cash Match).

The parties filed cross motions for summary judgment before then-Judge Mary Yu. Leslie and Tammy claimed that because Greg and Glenda breached the CTA, the sisters should be allowed to purchase the property under the default provision, Section 12. Greg and Glenda sought dismissal of Leslie and Tammy's claim for specific performance under Section 12 of the CTA and asked the court to allow them to sell to Manson unless Leslie and Tammy could mirror Manson's offer under Section 13 of the CTA.

On Friday, February 24, 2012, Judge Yu denied Leslie and Tammy's motion and granted Greg and Glenda's, authorizing Greg and Glenda "to close the proposed sale to Manson . . . unless Leslie and Tammy elect to match the offer and proceed to provide proof of actual ability to do so as one would be required to do in any other bona fide offer." That same day, Greg and Glenda's attorney, James Fowler, sent Turner a letter indicating that Greg and Glenda would sign off on Manson's offer early on Monday, February 27, 2012, unless

---

[3] Snopac Prods., Inc. v. Spencer, noted at 169 Wn. App. 1010 (2012).

[4] This section provided that "the price to be paid to each Acceptor shall be equivalent in amount and method of payment . . . [and] [a]ny such purchase of the Acceptors' Undivided Interests by the Rejectors shall be upon the same terms and conditions." (emphasis added).

Leslie and Tammy provided adequate proof of their ability to match by Sunday, February 26, 2012.

Turner and his associate scrambled over the weekend to compile a list of Leslie's and Tammy's assets. On the morning of February 27, 2012, Fowler told Turner that he deemed Leslie's and Tammy's listed assets as inadequate to match Manson's offer. To resolve the funding dispute, the parties went back before Judge Yu on February 28, 2012. Manson's offer was set to expire that same day.

The legal malpractice dispute centers on the evidence Turner submitted to Judge Yu to establish his clients' ability to mirror Manson's purchase offer. Turner represented that Leslie and Tammy had the ability to purchase the Snopac Property and to mirror Manson's indemnification agreement word-for-word. Turner prepared Exhibit A, a summary of Leslie's and Tammy's assets, to explain that the sisters had sufficient assets available for the Cash Match and the Indemnification Match. Exhibit A listed two conditionally approved bank loans totaling $500,000 and—as an alternative—another $355,138.09 from brokerage and retirement accounts belonging to Leslie's significant other, Paul Neir. Turner estimated the net post-tax value of Neir's accounts to be at least $250,000. The document also listed various other assets totaling over $2.4 million for the sisters to use to meet the Indemnification Match.

Neir had signed a declaration, prepared by Turner, indicating his willingness to pledge his assets to cover Leslie's portion of the purchase price. Turner provided a copy of the declaration to Fowler, but he did not file the

declaration with the court or provide a copy to Judge Yu. Instead, he included a statement in Leslie's declaration to the effect that Neir was willing to pledge his assets to help Leslie complete the purchase. Because Fowler had a copy of the Neir declaration, he did not challenge the admissibility of Leslie's statement; he understood that any evidentiary objection would be futile because Turner would simply file the Neir declaration if he raised an ER 801 objection.

Judge Yu ruled that Leslie and Tammy's offer was not a mirror offer. She entered an order on February 28, 2012, authorizing Greg and Glenda to close the sale with Manson. In early March 2012, Leslie and Tammy terminated their relationship with Turner.

On January 28, 2015, Leslie and Tammy filed this lawsuit, alleging legal malpractice, breach of fiduciary duty, and a violation of Washington's Consumer Protection Act.[5]

Two months later, this court issued its unpublished opinion in the sisters' appeal of the real estate lawsuit. The court affirmed Judge Yu's decision, concluding that Leslie's and Tammy's declarations demonstrated that they intended to fund the purchase with a combination of loan funds and personal assets if they failed to secure sufficient financing. Blakey, No. 71036-2-I, slip op. at 15. The court held the proffered financing was conditional and, thus, not equivalent to Manson's cash offer. Id. The court also held that the sisters had

---

[5] The trial court dismissed the Consumer Protection Act claim on summary judgment. That decision is not challenged on appeal.

-6-

insufficient liquid assets available to match Manson's purchase price. Id. at 16.

It noted

> [a]lthough Leslie and Tammy offered bank records establishing that Neir's accounts held the amounts claimed, they presented no affidavit or other admissible evidence in support of Neir's willingness to pledge that money toward the purchase of the property. Because Leslie's statement in her declaration that he was "willing and able" to do so is inadmissible hearsay, it was properly not considered on summary judgment. ER 801, 802; Dunlap v. Wayne, 105 Wn.2d 529, 535, 716 P.2d 842 (1986). The admissible evidence on summary judgment established only that Leslie and Tammy had $387,996.83 in their combined accounts, which fell short of the $500,000 cash they needed to match Manson's offer.
>
> Because there are no disputed facts regarding Leslie and Tammy's inability to timely match Manson's offer to purchase, Gregory and Glenda were entitled to summary judgment decreeing that Leslie and Tammy failed to match the offer and authorizing Gregory and Glenda to close the sale.

Id. The court did not reach the issue of whether Leslie and Tammy "matched the indemnity portion of the offer [or whether Manson's] promise to indemnify was illusory." Id. at 16 n.6.

On summary judgment in the legal malpractice action, Leslie and Tammy claimed they had identified to Turner more assets than he had included in Exhibit A, and they were unaware he had not filed Neir's declaration until this court rejected their appeal in the real estate lawsuit. They claimed Turner breached the applicable standard of care by failing to make a record of all their assets to demonstrate their ability to match Manson's offer. They argued, based on the appellate decision, that had Turner filed Neir's declaration pledging his brokerage and retirement funds for Leslie's use, the outcome of the appeal would have

been different because they would have presented admissible evidence they had sufficient cash to match that portion of Manson's offer. They further maintained Turner negligently prepared Exhibit A by making it appear that they planned to match Manson's offer using only conditionally approved loans, when they specifically told Turner they could come up with cash, if they needed to do so. Leslie and Tammy also pointed to Turner's failure to list another $275,000 in retirement funds Tammy had identified to Turner ahead of the hearing before Judge Yu, as well as an additional $146,000 in Microsoft stock and assets in a 401(k) account that Neir indicated by e-mail he could make available if needed.[6]

Turner filed a cross motion, arguing that he provided all the information he had regarding the sisters' assets to Judge Yu and opposing counsel during the February 28, 2012 hearing. He argued Judge Yu's decision was based less on the total amount of assets the sisters held and more on the type of assets, namely contingent loans, on which Leslie and Tammy relied. Turner also argued he did not breach the standard of care regarding the indemnification portion of Manson's offer. He explicitly argued at the summary judgment hearing that the Indemnification Match was not an issue for the trial court to consider.

The trial court denied the sisters' motion for summary judgment and granted Turner's motion in part. It significantly narrowed the legal malpractice claims by finding no genuine issues of material fact as to Turner's representation,

---

[6] This claim was based on the fact that during the weekend when Turner was compiling information on the sisters' assets, Leslie and Tammy disclosed these assets to Turner and asked if they should include them in the materials presented to Judge Yu. Turner did not include these assets in his list of assets.

except as to one issue—whether the failure to file Neir's declaration was professional malpractice.

In the sisters' motion for reconsideration, they argued the trial court had not addressed their claim that Turner had breached the standard of care in presenting the evidence related to the Indemnification Match. In addition, they maintained the trial court had not addressed Turner's failure to include Tammy's retirement plans and Neir's Microsoft stock and 401(k) assets in Exhibit A.

The trial court rejected the first argument, but ruled that it would "also allow as genuine issues of material fact whether [Turner's] failure to include Tammy Blakey's other retirement plans and Paul Neir's Microsoft shares and Avtech 401 K plan constituted professional negligence." It specifically stated that there were no other genuine issues of material fact that the jury would hear.

The parties interpreted the trial court's order as a dismissal of the sisters' legal malpractice claim relating to the Indemnification Match. They also interpreted the ruling to mean that evidence regarding the sisters' ability or inability to meet the Indemnification Match was irrelevant. During a hearing on pretrial motions, Leslie and Tammy stated that, as a result of the summary judgment rulings, the "issues regarding indemnity" were "off the table," which would shorten the trial. Turner did not challenge this statement. The trial court granted the sisters' motion in limine to exclude evidence that Manson had obtained environmental liability insurance coverage, without opposition by Turner, finding the issue moot. Similarly, the court granted Turner's motion in limine to exclude evidence of the sisters' ability to post an indemnification bond.

This ruling was based on Turner's argument that the "underlying trial court's order found that plaintiffs failed to match the cash portion of the offer because of the financial contingencies involved in their offer and not because of a bonding issue. Thus, evidence and testimony regarding the bonding issue are moot and irrelevant in this legal malpractice litigation." Leslie and Tammy agreed the issue was moot.

The parties agreed to bifurcate the trial and have the trial court decide the breach of fiduciary duty claim. The jury found that Turner's failure to file the Neir declaration, failure to present evidence of Tammy's retirement plans, and failure to present evidence of Neir's Microsoft shares and Avtech 401(k) plan constituted professional negligence. It further found that these acts were proximate causes of damage to Leslie and Tammy. The jury found damages of $1,588,323.56 and allocated 80 percent fault to Turner and 20 percent fault to Leslie and Tammy. Following a post-verdict bench trial, the trial court concluded Turner did not breach his fiduciary duty to Leslie and Tammy. Both parties appeal.

## ANALYSIS

### I.

Turner contends the trial court's summary judgment rulings and pretrial evidentiary rulings relieved Leslie and Tammy of the requirement of proving "the case-within-the-case."

A. Burden of Proof in a Case-Within-A-Case

> To establish a claim for legal malpractice, a plaintiff must prove the following elements: (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the

> attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). When an attorney makes an error during litigation, the plaintiff must prove "the trial-within-the-trial." Aubin v. Barton, 123 Wn. App. 592, 608, 98 P.3d 126 (2004). The first step is to determine whether the client's case was lost or compromised by the attorney's alleged negligence. Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson, 95 Wn. App. 231, 235, 974 P.2d 1275 (1999). The second question is whether the client would have fared better "but for" the attorney's mishandling of the claim. Id. at 236. Accordingly, a plaintiff in such a malpractice suit must produce evidence to support each element of the underlying case. See Schmidt v. Coogan, 162 Wn.2d 488, 492, 173 P.3d 273 (2007). In this case, Leslie and Tammy would have to show their ability to meet both the Cash Match and the Indemnification Match to mirror Manson's offer.

Generally, if the error occurs during trial, the causation issue is relatively straightforward, and the trier of fact tries the action the client claims was mishandled and decides whether the client would have prevailed but for the mishandling. Daugert v. Pappas, 104 Wn.2d 254, 257, 704 P.2d 600 (1985). There is no direct precedent, however, for how to evaluate causation when the error allegedly occurred at the summary judgment stage of a proceeding.[7] In

---

[7] The parties dispute whether Judge Yu's decision that Leslie and Tammy did not match Manson's purchase offer was made in the course of a summary judgment proceeding. It is clear from Blakey v. Blakey, however, that the parties presented the issue to Judge Yu on summary

Daugert, our Supreme Court evaluated how a claimant would establish malpractice when the claim arose from the attorney's failure to file a motion for discretionary review. Id. at 255. The Supreme Court held that when the question of the client's likelihood of prevailing on appeal requires an analysis of the law and the rules of appellate procedure, a judge, and not a jury, should make the cause in fact decision. Id. at 258-59. By analogy, it seems logical that when evaluating whether a lawyer has presented sufficient admissible evidence on summary judgment to warrant specific performance at either the trial court or appellate level, the cause in fact determination is most appropriately decided by a judge.

Turner argues that even if the sisters could have met the Cash Match, they still would have lost the Snopac Property because they would not have convinced a reasonable trial court that they could match Manson's unlimited environmental indemnification. He contends the trial court erred in not requiring Leslie and Tammy to prove the latter proposition to the jury as a part of their proof of proximate cause. Leslie and Tammy counter that assuming Turner is correct and they would have lost their bid to purchase the property because they could not meet the Indemnification Match, losing the Snopac Property was the result of Turner's malpractice. With the dismissal of any malpractice claim associated with the Indemnification Match, they argue, Turner was properly foreclosed from making this proximate cause argument.

---

judgment, and this court reviewed her decision under the de novo summary judgment standard. No. 71036-2-I, slip op. at 10.

This court struggles to discern where Turner framed the issue on appeal for the trial court to address in the first instance. At the beginning of trial, his counsel asserted it was important for the jury to learn about the Indemnification Match so it could "understand the whole story," but counsel then agreed there was no dispute that the sisters met that portion of Manson's offer. Turner's counsel also suggested at one point that the indemnification issue was relevant to proximate cause but then never articulated why this was so. It is understandable, given counsel's argument below, why the trial court did not directly rule one way or the other on the issue before.

Nevertheless, the trial court excluded evidence of the sisters' ability to match Manson's indemnification, necessarily focusing the legal malpractice lawsuit on only the Cash Match. Although we generally review the trial court's evidentiary rulings for an abuse of discretion, Hollins v. Zbaraschuk, 200 Wn. App. 578, 582, 402 P.3d 907 (2017), when, as here, the rulings are predicated on a ruling as to the applicable law, the standard of review is de novo, State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

The question, properly framed, is whether the sisters had admissible evidence of sufficient assets to convince a reasonable court on summary judgment that they had matched Manson's indemnification offer.[8] We conclude

---

[8] Turner argues that Judge Yu appeared so focused on the financial backing Manson had that the sisters simply could never convince her they had the ability to provide as much security from environmental liability as Manson could. But the purpose of the "trial-within-a-trial" in a legal malpractice action is not to recreate what a particular judge would have done. Brust v. Newton, 70 Wn. App. 286, 293, 852 P.2d 1092 (1993). Rather, the court's task is to determine what a reasonable judge would have done, id., or in the case of an appeal, what the reasonable appellate court would have done, Daugert, 104 Wn.2d at 258.

as a matter of law that they did. Greg and Glenda asked Leslie and Tammy to agree to indemnify them for up to $1,695,000, the projected environmental cleanup costs. It is undisputed the sisters demonstrated they possessed over $2.4 million in assets, not counting the Snopac Property itself or the judgment from the SnoPac Products, Inc. litigation, to support any environmental indemnification.

Our conclusion is supported by Turner's concession that the evidence of the sisters' ability to meet the Indemnification Match was immaterial. In Turner's motion for summary judgment, he argued Leslie and Tammy lost the Snopac Property—not because they could not meet the indemnification demand of their siblings—but because they made a strategic decision to fund the purchase with conditionally approved bank-financed loans or with funds locked in brokerage and retirement accounts. Turner explicitly argued that the Indemnification Match was not an issue in the case:

> [Leslie and Tammy] had to match the Manson offer, and the Manson offer for them to match would have been their half . . . which is $500,000 cash, without any financial contingences, and then . . . indemnification, which really, at this point . . . is not the issue.
>
> So really, the question boils down to is did [Turner] meet [the] standard of care in presenting the evidence that demonstrates to the court what the plaintiffs had to offer in terms of matching that [cash] offer.

(emphasis added).

In opposing the sisters' motion for reconsideration, Turner again stated the Indemnification Match "was not the issue in the case," and that the only issue

remaining was whether Turner met the standard of care in presenting evidence of the sisters' ability to meet the Cash Match. He pointed out the court had addressed the Indemnification Match by determining on the record that "<u>plaintiffs' failure to match the Manson offer was not based on the indemnification portion, but the cash portion of the Manson offer.</u>" (emphasis added).

Turner subsequently conceded during trial that the sisters had, in fact, presented evidence of their financial ability to meet the indemnification:

> Judge Yu's concern that this indemnity was not going to be – it wasn't that they didn't come in with showing that they had that much assets jointly. Clearly they did. There's no question about it. <u>They showed that they had 2.4 million dollars of assets.</u>

(emphasis added). Based on this record, we conclude that a reasonable court would have determined the sisters had matched Manson's indemnity offer.

B. Evidentiary Rulings

We also find no abuse of discretion in the trial court's evidentiary rulings excluding evidence of the Indemnification Match. Turner argued below that the evidence relating to the Indemnification Match was immaterial because of events that occurred in the real estate lawsuit and appeal after Turner's representation of the sisters ended:

> The court of appeals in its unpublished decision stated in footnote 6: "Because Leslie and Tammy failed to match the cash portion of the purchase offer, we do not consider their claims that they matched the indemnity portion of the offer and that the promise to indemnify was illusory. Accordingly, we do not address the parties' cross-motions for additional evidence on review, which ask us to consider evidence ***not before the trial court regarding the purported value of the indemnity.***"

- 15 -

Plaintiffs continued to litigate their underlying case with replacement counsel after termination of defendants. They secured replacement counsel and submitted appellate briefs concerning their right to "match" the Manson offer. It is undisputed that defendants submitted plaintiffs' signed environmental indemnity agreements for the court[']s consideration. It is also undisputed that defendants submitted plaintiffs' financial statements for covering the . . . estimate[d] range of cleanup of the property. It is also undisputed that defendant Turner presented argument concerning plaintiffs' assets for covering the environmental indemnity. What happened after defendants were terminated by plaintiffs concerning the value of the indemnity agreement is not material for purposes of plaintiffs' present summary judgment motion.

Turner further argued that the sisters' ability to obtain an indemnification bond was similarly immaterial because "Manson's offer did not have a bonding component to it and the underlying judgment arose and fell on the $500,000 cash match portion of the offer." (emphasis added). The sisters replied, "So be it," and reiterated their argument that Turner breached the applicable standard of care by failing to show their ability to meet the Cash Match. If the underlying judgment rose and fell on the sisters' ability to meet the Cash Match, there was no need to present evidence relating to the Indemnification Match. By Turner's own concession, the underlying case was narrowed to a single issue: whether the sisters could have matched Manson's cash offer. Accordingly, we conclude the trial court did not abuse its discretion in concluding that evidence of the sisters' ability to fund the Indemnification Match was irrelevant.

II.

Next, Turner argues the trial court erred in admitting excerpts of the Court of Appeals decision in Blakey v. Blakey. He contends the trial court erred in

ruling that the decision was "law of the case," and in overruling his hearsay and ER 403 objections. We disagree.

A. Law of the Case

The law of the case doctrine "involves the effect of a previous ruling within one action on a similar issue of law raised subsequently within the same action." Lodis v. Corbis Holdings, Inc., 192 Wn. App. 30, 54, 366 P.3d 1246 (2015) (internal quotations omitted), review denied, 185 Wn.2d 1038, 377 P.3d 744 (2016). It is intended to "afford a measure of finality to litigated issues." Id. at 55 (internal quotations omitted).

Turner is correct that the law of the case doctrine does not apply. The Blakey v. Blakey holding was binding between the Blakey siblings; in a case-within-a-case context, however, the prior ruling is not legally binding on Turner. But the trial court did not hold that Blakey v. Blakey was law of the case and never instructed the jury to consider it as such. Nor did the trial court rule that the Court of Appeals decision was legally binding on Turner. Rather, the trial court allowed Robert Adolph, Turner's standard of care expert, to testify that the decision was incorrectly decided.[9]

Turner had the opportunity to present evidence and argue to the jury that the Court of Appeals decision simply got the facts wrong. Turner's expert also

---

[9] Although Turner maintains the Court of Appeals decision was incorrectly decided because the February 28, 2012 hearing was not a summary judgment hearing, he does not ask this court to revisit the Blakey v. Blakey decision. Therefore, we decline to readdress our previous opinion. See RAP 2.5(c)(2) ("The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.").

- 17 -

testified that this court was wrong in ruling that Leslie's declaration contained inadmissible hearsay. The trial court did not conclude that the Court of Appeals ruling was law of the case or binding on Turner. Thus, we reject this argument.

B. Hearsay

Citing to In re the Detention of Pouncy, Turner also argues that the Court of Appeals decision is inadmissible hearsay. Hearsay is an out-of-court oral or written assertion offered in evidence to prove the truth of the matter asserted. ER 801. Trial courts' evidentiary rulings are reviewed for abuse of discretion. Hernandez v. Stender, 182 Wn. App. 52, 58, 358 P.3d 1169 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. Clipse v. Commercial Driver Servs., Inc., 189 Wn. App. 776, 787, 358 P.3d 464 (2015). A decision is manifestly unreasonable if the trial court takes a view that no reasonable person would take. Id.

In Pouncy, a sexually violent predator commitment case, the trial court permitted the State to introduce evidence of a trial judge's findings from a different proceeding in which Pouncy's expert had testified. In re the Det. of Pouncy, 144 Wn. App. 609, 613-16, 184 P.3d 651 (2008). Those findings stated that Pouncy's expert's methodologies were not generally accepted in the mental health professional community. Id. at 616. This court concluded that the trial court erred in allowing the State to introduce judicial findings about a defense expert from a different, unrelated trial. Id. at 622-26. Our Supreme Court affirmed the Court of Appeals decision, holding that the findings should not have been admitted because they "were out-of-court statements used to prove the

truth of the matter asserted—that [the expert's] methodologies lacked acceptance by his peers." In re the Det. of Pouncy, 168 Wn.2d 382, 393, 229 P.3d 678 (2010).

But judicial decisions are not hearsay if not offered to prove the truth of the matter asserted. In a legal malpractice trial, the court may admit the transcript from the underlying case because the evidence is not being offered for the truth of the matter asserted but, rather, to demonstrate what evidence was presented in the underlying case proceedings. See Walker v. Bangs, 92 Wn.2d 854, 861-62, 601 P.2d 1279 (1979) (transcript of original trial is the most trustworthy evidence of events that transpired in the underlying lawsuit). A claimant must establish that her case was lost or compromised by the attorney's alleged malpractice. Shepard Ambulance, 95 Wn. App. at 235. Thus, the trial court correctly ruled that somehow the jury needed to be informed about what actually transpired in the Blakey v. Blakey lawsuit and appeal.[10]

Although the trial court did not explicitly explain the basis for overruling Turner's hearsay objection, this court can affirm an evidentiary ruling on any ground supported by the record. State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995). The record supports the admission of the Blakey v. Blakey decision as a record of what happened in the real estate appeal, consistent with Walker. As a result, the trial court did not abuse its discretion in admitting the Court of Appeals decision over Turner's hearsay objection.

_____

[10] Turner argues that only the trial court proceedings were relevant. We disagree. The sisters lost their case ultimately on appeal. Why they lost the appeal was just as relevant to the malpractice claim as were Judge Yu's rulings on summary judgment.

C. Undue Prejudice

Turner contends that the excerpt of the Court of Appeals opinion, even if relevant, was unduly prejudicial under ER 403. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Lodis, 192 Wn. App. at 48. If the evidence is "undeniably probative of a central issue in the case," there is a slim chance the danger of unfair prejudice will substantially outweigh the probative value. Id. (quoting Carson v. Fine, 123 Wn.2d 206, 224, 867 P.2d 610 (1994)). "Because of the trial court's considerable discretion in administering ER 403, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion." Id. (quoting Carson, 123 Wn.2d at 226).

In Walker, the Supreme Court rejected a similar ER 403 challenge. 92 Wn.2d at 862. While recognizing that a trial court has the discretion to exclude this evidence, the Court concluded that "[b]ecause the alleged negligence of [the plaintiff's] counsel in the conduct of the . . . trial is the very issue litigated in the malpractice action, the circumstances do not appear compelling for the exercise of such discretion." Id.

We similarly find no abuse of discretion here. The trial court reasoned that at least a portion of the unpublished opinion should be admitted as an exhibit because Judge Yu's two summary judgment February 2012 rulings were included as exhibits. In addition, the trial court considered that admitting an excerpt of the decision downplayed its importance, and if it was presented differently than Judge Yu's rulings, the jury might think it should place more

emphasis on it. Given the importance and relevance of all three rulings, this decision is not manifestly unreasonable.

Despite Turner's arguments to the contrary, this court's opinion was not offered by Leslie and Tammy solely for its prejudicial effect. Rather, it showed why Leslie and Tammy lost the real estate appeal—because of trial counsel's failure to introduce admissible evidence, a necessary fact for the case-within-the-case proof in this legal malpractice case.

Any prejudice to Turner was ameliorated by the fact that the trial court allowed Turner to argue that the Court of Appeals decision was factually inaccurate and wrongly decided. The trial court allowed Turner's standard of care expert, Robert Adolph, to testify that Judge Yu had considered Paul Neir's assets even without having Neir's declaration in hand and that the February 28, 2012 hearing was not a summary judgment hearing subject to the evidence standards cited by the Court of Appeals. Fowler, Greg and Glenda's attorney, and Turner both testified that, despite the Court of Appeals opinion, Judge Yu did consider all of Leslie's declaration—even those portions the Court of Appeals held were inadmissible hearsay.

Lastly, ER 105 provides that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."[11] Generally, it is the objecting party's burden to request such an

---

[11] See also 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 1.06 (6th ed. 2017) (WPIC).

instruction. Turner could have requested an ER 105 instruction advising the jury that the Court of Appeals opinion could be considered only to show the outcome of the real estate lawsuit and not for the truth of anything stated in the opinion; this type of instruction would have corrected any prejudice to Turner. See State v. Barber, 38 Wn. App. 758, 771, 689 P.2d 1099 (1984) ("Failure to request a limiting instruction waives any error that an instruction could have corrected."). Because Turner did not propose a limiting instruction under ER 105, he did not preserve this issue for appeal. Lamborn v. Phillips Pac. Chem. Co., 89 Wn.2d 701, 707, 575 P.2d 215 (1978).

Therefore, we conclude the trial court did not abuse its discretion in admitting as an exhibit excerpts from the Court of Appeals decision in Blakey v. Blakey.

III.

Next, Turner argues the jury instruction for damages was improper and awarded a double recovery to the sisters. This court reviews jury instructions de novo for errors of law. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). Jury instructions (1) cannot be misleading, (2) must allow counsel to argue their theory of the case, and (3) must properly inform the jury of the applicable law, when read as a whole. Id. The instruction is erroneous if it does not contain all of these elements. Id. Even if an instruction is erroneous, it is only reversible if it prejudices a party. Id. "Prejudice is presumed if the instruction contains a clear misstatement of law; prejudice must be demonstrated if the instruction is merely misleading." Id.

- 22 -

In addition, trial court decisions addressing the proper components of damage awards are reviewed de novo. Shoemake v. Ferrer, 143 Wn. App. 819, 825, 182 P.3d 992 (2008), aff'd, 168 Wn.2d 193, 225 P.3d 990 (2010). "The general rule is that the measure of damages for legal malpractice is the amount of loss actually sustained as a proximate result of the attorney's conduct." Id. (quoting Matson v. Weidenkopf, 101 Wn. App. 472, 484, 3 P.3d 805 (2000)). "The aim of any legal malpractice damage award must thus be to place successful plaintiffs, as nearly as possible, in the position they would have occupied had their attorneys capably and honestly represented them." Id.

Turner argues Jury Instruction 12, the damages instruction, was misleading and a misstatement of the law. We disagree. Instruction 12 provided that the jury should consider the following types of damages:

> (1) the difference between the $500,000 Leslie Spencer and Tammy Blakey would have been required to pay to acquire the Snopac [P]roperty, and the amount that you determine would be the lost appreciation of the Snopac [P]roperty if Duncan Turner had not been negligent in handling the original case;
>
> (2) the lost rental income that Leslie Spencer and Tammy Blakey would have received from the Snopac [P]roperty if Duncan Turner had not been negligent in handling the original case; and
>
> (3) the reasonable attorney fees and costs Leslie Spencer and Tammy Blakey incurred by appealing Judge Yu's ruling ordering the sale to Manson [of] the Snopac [P]roperty if Duncan Turner had not been negligent in handling the original case.

Turner contends Leslie and Tammy recovered more than they were entitled to because lost rental income is "innate to the value" of the property. None of the cases on which Turner relies stands for this proposition. In McCurdy v. Union Pac. R.R., the Supreme Court identified the proper measure of

damages for negligent damage to personal property. 68 Wn.2d 457, 467, 413 P.2d 617 (1966). In that case, the plaintiff's private railroad car was damaged by the railroad company. Id. at 460-61. The court held that the measure of damages depends on whether the property is a total loss or just damaged and not destroyed. Id. at 467. We do not find this case supportive of the proper measure of damages in a malpractice case when the damages lost relate to the lost opportunity to acquire a piece of real property.

Nor is Olympic Pipe Line Co. v. Thoeny applicable here. 124 Wn. App. 381, 101 P.3d 430 (2004). That case involved the plaintiff's eminent domain petition for a pipeline easement across the defendant's land. Id. at 384-87. The court held there that the measure of damages in a condemnation action is the diminution of fair market value of the property caused by the taking. Id. at 393. The case does not address whether a plaintiff in a malpractice lawsuit can recover both the lost appreciation of the real estate she was foreclosed from purchasing and lost rental income she would have earned had she become the owner of that property.

The measure of damages in a legal malpractice case is the amount of loss actually sustained as a proximate result of the attorney's conduct. Shoemake, 143 Wn. App. at 828-29. As set out in Holmquist v. King County, the right of exclusive use of property is a property right separate and apart from ownership of the land itself. 192 Wn. App. 551, 561-62, 368 P.3d 234 (2016). Washington courts compensate the loss of this exclusive possession through an award of fair and reasonable rent. Id. at 562-63. We have found no case in which a

Washington court held that a claimant may not recover both lost appreciation and lost rental income when that claimant lost both permanent ownership and loss of the right to rent that property to third parties. Accordingly, we find no instructional error.

IV.

Lastly, Turner contends his motion for a new trial based on the sisters' counsel's misconduct—by attempting to inject testimony about the Court of Appeals opinion before the court had admitted the evidence—should have been granted.

CR 59(a)(2) provides that a verdict may be vacated and a new trial granted if misconduct of the prevailing party materially affects the substantial rights of the other party. We review a trial court's denial of a motion for a new trial under CR 59(a)(2) for abuse of discretion. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000). In reviewing the trial court's decision, we consider whether "such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial." Id. (quoting Moore v. Smith, 89 Wn.2d 932, 942, 578 P.2d 26 (1978)). The trial court is in the best position "to most effectively determine if counsel's misconduct prejudiced a party's right to a fair trial." Miller v. Kenny, 180 Wn. App. 772, 815, 325 P.3d 278 (2014).

A party seeking a new trial based on counsel's conduct must establish that (1) the conduct was misconduct, (2) the misconduct was prejudicial, (3) the misconduct was objected to at trial, and (4) the misconduct was not cured by the

trial court's instructions. Teter v. Deck, 174 Wn.2d 207, 226, 274 P.3d 336 (2012). In Teter, the Washington Supreme Court upheld then-Judge González's grant of a new trial based on counsel's misconduct. Id. at 222. In that case, defense counsel repeatedly violated the rules of evidence by trying to elicit testimony about subjects the court ruled inadmissible or irrelevant and to put exhibits before the jury that had not been admitted. Id. at 223. Defense counsel also violated Judge González's prohibition on speaking objections and two orders limiting admissible evidence. Id. at 224.

In this case, the trial court found that at least some of the sisters' counsel's conduct was misconduct because he elicited testimony about the Court of Appeals decision before the trial court had admitted the exhibit. But the court concluded the misconduct did not prejudice Turner. Leslie and Tammy's counsel did ask some questions about the Court of Appeals decision that "were not allowed pursuant to the court's rulings."[12] Turner objected, however, and the trial court sustained most of these objections. Counsel's misconduct did not rise to the level found in Teter. We conclude the trial court did not abuse its discretion in denying Turner's motion for a new trial.

## V.

Leslie and Tammy argue Turner should not have been allowed to present evidence of and argue contributory negligence, an affirmative defense Turner did

---

[12] The sisters claim the trial court's misconduct finding is not supported by substantial evidence. Based on the record before us, in which their counsel questioned witnesses about the Court of Appeals opinion before the trial court had determined how it would be admitted, we conclude the misconduct finding is supported by substantial evidence.

not plead. Alternatively, they argue the jury's verdict finding them contributorily negligent is not supported by substantial evidence.[13]

A. Contributory Negligence

Leslie and Tammy claim that the trial court abused its discretion in allowing Turner to present evidence of their contributory negligence because Turner did not plead this affirmative defense in his answer and first gave notice of his intent to present this defense in his proposed jury instructions, one week before trial.

CR 8(c) requires parties to plead the affirmative defense of contributory negligence. Our Supreme Court has recognized, however, that the requirement is not absolute. Mahoney v. Tingley, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975); see also Henderson v. Tyrrell, 80 Wn. App. 592, 624, 910 P.2d 522 (1996). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." CR 15(c); see also Bernsen v. Big Bend Elec. Coop., Inc., 68 Wn. App. 427, 433-34, 842 P.2d 1047 (1993). We review a trial court's decision to permit a party to amend pleadings to conform to evidence at trial under the abuse of discretion standard. Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wn. App. 412, 433, 40 P.3d 1206 (2002).

We find no abuse of discretion here. Leslie and Tammy were on notice of this defense, even though it was not pleaded. Turner argued on summary

---

[13] Leslie and Tammy also maintain that contributory negligence is not available as a defense because Turner committed an intentional tort by deciding not to file Neir's declaration.

judgment that Leslie and Tammy had caused their own loss because of decisions they made to rely on loans to fund the purchase. Turner also argued below that whether the sisters had delayed unreasonably in seeking cash for the deal had implicitly been tried by both parties. The sisters were prepared to address, and did address, Turner's factual arguments at trial. The trial court's decision to permit this affirmative defense was not unreasonable or untenable.

B. Substantial Evidence

Leslie and Tammy argue the jury's contributory fault finding is not supported by substantial evidence. A jury's verdict may only be overturned "when it is clearly unsupported by substantial evidence." Burnside v. Simpson Paper Co., 123 Wn.2d 93, 1008, 864 P.2d 937 (1994). "[T]he reviewing court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered." Id. at 108 (quoting State v. O'Connell, 83 Wn.2d 797, 839, 523 P.2d 872 (1974)).

Turner presented evidence that Leslie, a real estate agent, learned of Manson's offer on December 1, 2011. Leslie understood she needed either cash or an unconditional loan to be able to fund the purchase. She testified that she and Tammy wanted to finance the Cash Match with loans because it would be easier than liquidating stock. Tammy, like Leslie, testified that she preferred to finance the offer with loans. Leslie did not apply for a loan until January 20, 2012; Tammy applied for her loan just 10 days earlier, on January 10, 2012.

---

This argument lacks any merit. Leslie and Tammy sued Turner for negligence. Contributory negligence is available as an affirmative defense against any claim based on fault.

Leslie thought she could get the loan approved within 15 to 30 days, but neither of the sisters' loans had been approved by the end of February 2012, when they knew they needed to have cash on hand. As Turner argued at trial, this delay in seeking loan funding contributed to the need for Turner, Leslie and Tammy to scramble over the weekend of February 25-26, 2012 to document how the sisters would fund the Cash Match. Based on this testimony, we conclude there was substantial evidence for the jury to find that Leslie and Tammy were contributorily negligent.

VI.

Finally, Leslie and Tammy ask this court to reverse the trial court's order dismissing their breach of fiduciary duty claim. They based their claim on alleged violations of several Rules of Professional Conduct (RPCs) and sought, as the sole remedy, disgorgement of fees paid to Turner.[14]

To prevail on their fiduciary duty claim, Leslie and Tammy had to prove that Turner violated one or more RPCs. A finding of causation and damages is not required to support an order of disgorgement. See Eriks v. Denver, 118 Wn.2d 451, 462, 824 P.2d 1207 (1992). Whether an attorney's conduct violates the RPCs is a question of law. Id. at 457-58. Similarly, whether an attorney has breached his fiduciary duty to a client is a question law. Id. at 457; see also

_____

[14] As a preliminary matter, Leslie and Tammy claim the trial court erred by limiting the breach of fiduciary duty claim to Turner's failure to file the Neir declaration. This limitation appears to be based on an e-mail the sisters' counsel sent the trial court and Turner's counsel in late 2016 or early 2017. The referenced e-mail, however, is not part of the Clerk's Papers. Failure to designate relevant portions of the record precludes appellate review. Olmsted v. Mulder, 72 Wn. App. 169, 182-83, 863 P.2d 1355 (1993). Because the e-mail referenced at the beginning of the fiduciary duty hearing, which purported to limit the hearing to that one issue, is not part of the record on appeal, we cannot evaluate the merits of the sisters' assigned error.

Arden v. Forsberg & Umlauf, P.S., 193 Wn. App. 731, 746, 373 P.3d 320 (2016). As a result, we review the breach of fiduciary duty claim de novo. See Stone v. Sw. Suburban Sewer Dist., 116 Wn. App. 434, 438, 65 P.3d 1230 (2003) (questions of law are reviewed de novo).

Leslie and Tammy argue the trial court made findings of fact not supported by substantial evidence, erred in applying the attorney judgment rule to a claim of RPC violations, erred in finding Turner was not negligent in withholding the Neir declaration, and abused its discretion in denying their request for disgorgement of legal fees. We address each argument in turn.

A. Substantial Evidence

Leslie and Tammy assign error to two of the trial court's findings of fact. First, they claim substantial evidence does not support the finding that "[a]t no time did Judge Yu exclude from consideration on grounds of hearsay (or any other grounds) the statement in Leslie Spencer's declaration regarding Mr. Neir's pledge." Second, they assign error to the court's finding that Turner's standard-of-care expert opined that "RCW 6.15.020 prevents anyone from pledging an interest in a retirement account or an IRA or a pension as collateral for loans." We review the trial court's findings of fact to determine if they are supported by substantial evidence. Lang Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015). Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true. Id. (quoting Hegwine v. Longview Fibre Co., 32 Wn. App 546, 555-56, 132 P.3d 789 (2006)). Unchallenged findings of fact are accepted as true on appeal. Id.

Both findings challenged by Leslie and Tammy are supported by substantial evidence. Turner testified that Leslie's declaration, which was signed and dated on February 28, 2012, included a statement that Neir was "willing to and able to pledge his brokerage and retirement accounts, with a combined value of $355,138.09" to secure the Snopac Property. He confirmed Leslie's declaration was filed with the court, and, according to the February 28, 2012 order, Judge Yu reviewed Leslie's declaration. Turner further testified he referenced Neir's "near liquid" assets during the February 28, 2012 hearing before Judge Yu, and Greg and Glenda's attorney, Fowler, did not object to the admissibility of any part of Leslie's declaration. The trial court had a transcript of the hearing, as do we, and there is no evidentiary ruling by Judge Yu. Based on this testimony, we conclude there is substantial evidence supporting the finding that Judge Yu did not exclude the statement in Leslie's declaration regarding Neir's funds.

Likewise, Adolph testified during the jury trial that "IRAs are not valid collateral in the state of Washington. RCW 6.15.020 prevents anyone from pledging an interest in a retirement account or an IRA or a pension as collateral for loans." He clarified that a person could pledge the assets in these accounts, but no creditor could foreclose on such collateral, and thus, "[n]o lender would ever accept a piece of . . . collateral that you can't ever use." Adolph further testified that because Neir's assets were held in retirement accounts, they would have been inadequate and insufficient collateral for any bank loan Leslie sought. The record shows substantial evidence supporting the court's finding of fact

regarding Adolph's opinion about his understanding of the law as it relates to use of retirement accounts as collateral for loans.

Because substantial evidence supports these two findings and the remaining findings are not challenged, we rely on all of the trial court's findings of fact to determine if Leslie and Tammy proved violations of RPC 1.1, 1.2, 1.4, 1.7, and 1.8. In addition, because the written findings do not specifically address Leslie and Tammy's conflict of interest or duty of loyalty and communication allegations, we supplement the written findings with the trial court's oral ruling. See Lawrence v. Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001) ("Inadequate written findings may be supplemented by the trial court's oral decision or statements in the record.").

B. Attorney Judgment Rule

Leslie and Tammy contend the trial court erred in applying the attorney judgment rule to their breach of fiduciary duty claim. Washington courts recognize the attorney judgment rule as an affirmative defense to a legal malpractice claim. "Under the attorney judgment rule, the question is whether an attorney's particular judgment decision is within the range of reasonable alternatives or whether the attorney was negligent during the decision-making process." Arden, 193 Wn. App. at 760.

No Washington court has decided whether or when the attorney judgment rule may be invoked as a defense to an alleged RPC violation. We have reviewed the briefing submitted by the parties and find it inadequate to address on appeal. We decline to do so here. See State v. Thomas, 150 Wn.2d 821,

868-69, 83 P.3d 970 (2004) (courts decline to review for inadequate argument in briefs).

We conclude, however, that any error in applying the attorney judgment rule is harmless, because the evidence does not demonstrate any breach of the duty of loyalty or the conflict of interest rules by Turner.

C. Alleged RPC Violations

Leslie and Tammy argue that Turner violated RPC 1.1, the duty to provide competent representation, when he decided not to file Neir's declaration. Leslie and Tammy contend that the jury concluded Turner was negligent in failing to file the Neir declaration and, thus, the trial court abused its discretion in finding otherwise. We disagree.

Generally, a trial court may not substitute its judgment for the jury's. Teutscher v. Woodson, 835 F.3d 936, 944 (2016) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims.") (internal quotations and alteration omitted); Peralta v. State, 191 Wn. App. 931, 950, 366 P.3d 45 (2015) (when construing jury verdict, court must not substitute its judgment for that of the jury), overruled on other grounds, 187 Wn.2d 888, 389 P.3d 596 (2017). However, when several theories supporting a claim have been litigated and the jury may have supported its verdict by finding in a plaintiff's favor on any one of the theories, the trial court is free to interpret the verdict in any manner supported by the evidence. Teutscher, 835 F.3d at 952.

Before the jury, the sisters' standard-of-care expert, Chris Brain, testified that Turner breached the standard of care in two ways. First, Brain opined Turner erred in deciding the Neir declaration was not necessary to prove that his clients' offer mirrored Manson's offer. Second, Brain testified Turner breached the standard of care by not discussing his tax concerns with his clients before deciding to withhold the declaration. He opined that this action denied the sisters the opportunity to correct Turner's mistaken impression regarding the Neir "pledge," or the ability to choose to assume any tax risks Turner foresaw. The jury found that "the failure to file and serve the Paul Neir declaration" constituted professional negligence. It was not asked to specify whether its verdict was based on the first, second, or both theories advanced by Brain.

During the bench trial, Brain opined that Turner violated his ethical duties to Leslie and Tammy by failing to discuss his tax concerns with them before deciding to withhold the Neir declaration. He testified that Turner's conduct was not reasonable because he made the call without advising his clients of the range of alternatives available and the risks each alternative presented. The trial court found:

> 5.     The evidence shows Mr. Turner made a judgment decision about the best way to handle the Paul Neir declaration in light of the very limited time available in which to act, unanswered questions, and tax liabilities, which included reduction of the IRA amount pledged due to foreseeable tax penalties.
>
> 6.     Given the totality of the circumstances, which included a weekend rush to produce the requested proof, the court finds that Mr. Turner's judgment was within the range of reasonable

alternatives, and not negligent and thus, there was no breach of fiduciary duty by defendants.[15]

The jury's verdict and the trial court's findings can be harmonized if the jury's decision was based on Turner's assessment of the need for this additional item of evidence to prove the sisters could mirror Manson's offer, rather than on his failure to consult his clients regarding the tax issues before deciding to withhold the declaration. We will not reverse the trial court's findings under these circumstances. Accordingly, we proceed to evaluate the sisters' claimed RPC violations in light of this finding.

On appeal, Leslie and Tammy argue that Turner violated RPC 1.1, his duty to provide competent representation, by concluding that filing Neir's declaration would be a taxable event under federal tax laws. They argue that "[n]o competent lawyer could reasonably believe such a proposition." But there is nothing in the record to support this argument. During the bench trial, Brain refused to address whether Turner's legal analysis of the adverse tax consequences was correct:

> And so therefore, the reasonable thing to do if you were going to make that argument would have been to go to the client and say, we have two alternatives here. One alternative is we can try to use it in [Leslie's] declaration and get the evidence before the court and there won't be any adverse consequences, because I'm concerned about filing [Neir's] declaration.
>
> Whether those concerns are legitimate or not I'm not going to get into, but if that's what you are going to do, then you have a

---

[15] The trial court labeled these findings as "conclusions of law" rather than "findings of fact." The label attached is immaterial. Findings of fact that are erroneously called conclusions of law shall be reviewed as findings of fact. Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

duty to go to the client and say, these are your alternative courses of action . . . .

There is no evidence that Turner's legal analysis was incorrect. While the jury may have found Turner negligent in failing to discuss his misgivings about Neir's declaration with his clients, the jury had no basis for concluding that Turner negligently analyzed the potential adverse tax consequences of filing the declaration. Neither the trial court nor this court is bound by the jury's negligence finding as to this alleged RPC violation because the RPC 1.1 argument differs from the standard of care evidence presented to the jury.

Moreover, Leslie and Tammy have not established that Turner violated RPC 1.1 in his assessment of the tax consequences of Neir pledging his retirement assets. Under Internal Revenue Code 26 U.S.C. § 72(e)(4)(A) and 26 U.S.C. § 408(e)(4), pledging an annuity or an IRA is equivalent to a withdrawal from the annuity or IRA and subjects the amount of the pledge to the same tax consequences as if it had been withdrawn. In re Cassell, 443 B.R. 200, 210 (Bankr. N.D. Ga. 2010), aff'd, 713 F.3d 81 (11th Cir. 2013). Turner's legal analysis appears supported by this case law. Although Leslie and Tammy argue that the act of filing the declaration itself would not constitute a "pledge" and not trigger tax consequences, they provide no support for this proposition. Thus, they presented insufficient evidence to establish that Turner violated RPC 1.1.

Next, Leslie and Tammy argue that Turner violated RPC 1.4(a)(2) and (3) by failing to consult them regarding his decision to withhold the Neir declaration. RPC 1.4(a)(2) provides that a lawyer shall "reasonably consult with the client

about the means by which the client's objectives are to be accomplished," while RPC 1.4(a)(3) provides that a lawyer shall "keep the client reasonably informed about the status of the matter." But breaching the standard of care in communicating litigation strategy to one's client is not the same as a violation of RPC 1.4(a). As Comment 5 to RPC 1.4 states:

> In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to describe trial or negotiation strategy in detail.

We see no conflict between the jury's special verdict finding of negligence and the trial court's conclusion that Turner did not violate any RPC. There was sufficient evidence that Turner reasonably consulted with Leslie and Tammy about the preparations for the February 28, 2012 hearing and reasonably informed them of the status of the matter. In light of the rush Turner was in to compile and present evidence to the trial judge, Turner did not violate RPC 1.4(a)(2) or (3) by not discussing his reservations about the Neir declaration with his clients before deciding not to file it.

Finally, Leslie and Tammy further contend that Turner violated RPC 1.2, 1.7, and 1.8 by making his decision based on possible tax risks to Neir, a non-client, thereby breaching his duty of loyalty to Leslie and Tammy and creating a conflict of interest between Neir and Turner's clients. However, Leslie and Tammy must still establish that a breach of the duty of loyalty occurred or that a conflict of interest existed. Whether circumstances demonstrate a breach of duty of loyalty or create a conflict of interest under the ethical rules is a question of law

reviewed de novo.  State v. Regan, 143 Wn. App. 419, 428, 177 P.3d 783 (2008); see also Arden, 193 Wn. App. at 743.

RPC 1.2(a) provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation." RPC 1.7 prohibits an attorney from representing a current client if there is a conflict of interest with another client. RPC 1.8(b) provides that a lawyer shall not use information relating to the representation of a client to that client's disadvantage without that client's informed consent.

The trial court made no express written findings on the alleged duty of loyalty or conflict of interest claims.  If no findings are entered as to a material issue, it is deemed to have been found against the party having the burden of proof.  Pacesetter Real Estate, Inc. v. Fasules, 53 Wn. App. 463, 475, 767 P.2d 961 (1989).  Additionally, a trial court's oral ruling may be used to complement and explain written findings.  Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963).  In the trial court's oral ruling, it acknowledged that its decision was not based on the same negligence standard as considered by the jury.  It found that Turner's decision not to file the Neir declaration was based, not on a desire to advance Neir's legal interests, but to avoid negative consequences to his own clients.  This finding supports the trial court's conclusion that Turner did not violate any duty of loyalty owed to the sisters.  The trial court also found Turner did nothing to create a conflict of interest.  We agree with this decision and, therefore, affirm the trial court's determination that Turner did not violate RPC 1.2, 1.7, or 1.8.

## D. Disgorgement of Fees

A breach of ethical duties may warrant a disgorgement of attorney fees. Eriks, 118 Wn.2d at 462. While attorney misconduct can be so egregious as to constitute a complete defense to a claim for fees, not every act of misconduct will justify such a serious penalty. Kelly v. Foster, 62 Wn. App. 150, 156, 813 P.2d 598 (1991). It is ultimately within the trial court's discretion to decide whether such a remedy is necessary to discipline specific breaches of professional responsibility and to deter future misconduct. Id.; see also Eriks, 118 Wn.2d at 463. We review a trial court's decision to deny disgorgement of fees for abuse of this discretion.

Based on our conclusion that Turner did not violate any of the RPCs invoked by Leslie and Tammy, we conclude the trial court did not abuse its discretion in denying the request for disgorgement of attorney fees.

We affirm.

WE CONCUR:

Andrus, J.

Beckole, J.